**UNITED STATES of America and Vivian E. Reedy, Revenue Agent, Internal Revenue Service, Petitioners,**

v.

**A. B. BLACKBURN, Jr., Respondent.**

**UNITED STATES of America and Vivian E. Reedy, Revenue Agent, Internal Revenue Service, Petitioners,**

v.

**David SKINNER, Respondent.**

Nos. 82–205–Civ–J–B, 82–206–Civ–J–B.

United States District Court,
M. D. Florida,
Jacksonville Division.

May 7, 1982.

Randall M. Roden, Tax Div., Dept. of Justice, Washington, D. C., for petitioners.

John G. DeLancett, Orlando, Fla., A. B. Blackburn, Jr., Boyer, Tanzler, Blackburn, Boyer & Nichols, Jacksonville, Fla., for respondents.

## OPINION

SUSAN H. BLACK, District Judge.

The Court has for consideration the Petition to Enforce Internal Revenue Service Summons, filed herein on February 26, 1982. An evidentiary hearing was conducted before the undersigned on April 12, 1982.

The issues in question herein arise from two cases which were consolidated by an order of the Court entered March 30, 1982. In Case No. 82–205–Civ–J–B, the government seeks various records of the taxpayer in the possession of her attorney, A. B. Blackburn. In Case No. 82–206–Civ–J–B, the government seeks similar records in the possession of David C. Skinner, an accountant retained by the taxpayer as a potential expert witness.[1] In each case, the taxpayer intervened pursuant to 26 U.S.C. § 7609(b)(1), in an attempt to prohibit the enforcement of the summonses.

The taxpayer operated a tax and accounting service in which she engaged, among other things, in the preparation of tax returns. Prior to the present civil investigation, the taxpayer had been under investigation by the Criminal Investigation Division of the Internal Revenue Service for possible tax preparer violations. In August of 1979, the taxpayer retained attorney Arthur T. Boone to represent her. Shortly thereafter, Mr. Boone associated Mr. Blackburn, a specialist in tax law, to assist him in the representation of the taxpayer. Subsequently, upon the advice of Mr. Blackburn, Mr. Boone retained Mr. Skinner, an investigative accountant, to advise the attorneys in the preparation of the taxpayer's defense and to serve as an expert witness if necessary. After retaining counsel, the taxpayer delivered her records—those in question herein—to her attorneys to assist them in evaluating her case. As disclosed in a letter to this Court, Mr. Skinner was in possession of the records at the time the summonses were issued.

On November 28, 1979, the criminal investigation was closed and the taxpayer was informed of this fact. On September 25, 1980, Revenue Agent Vivian E. Reedy was assigned to examine the taxpayer's potential personal civil tax liability for the years 1977 to 1980. The taxpayer had filed late returns in 1977 and 1978, and has not filed returns for 1979 and 1980. In conducting her inquiry, Agent Reedy issued the summonses in question herein. Mr. Blackburn and Mr. Skinner, upon instructions from the taxpayer, have refused to comply with the summonses and, as noted above, the taxpayer has intervened.

## I. PURPOSE OF THE SUMMONS

In determining whether the summonses issued by the government are enforceable, the Court must initially ascertain the pur-

---

1. The *duces tecum* portions of the two summonses are identical and require the production of the following:

   All records and documents in your possession or control reflecting financial transactions of the above-named taxpayers during the years 1977, 1978, 1979 and 1980 including, but not limited to, the following:
   (1) All bank statements, checkbooks, cancelled checks, check stubs, check registers, checking account statements, records of certified checks purchased, deposit receipt slips, savings account passbooks, savings account statements, records of safe deposit boxes, and records of certificates of deposit, for the years 1977, 1978, 1979 and 1980.
   (2) All records of loans and mortgages which were transacted during the years 1977, 1978, 1979 and 1980, or which involved payments to or from the above-named taxpayers during the years 1977, 1978, 1979 and 1980.
   (3) All records and documents regarding stocks and bonds purchased, or sold by either or both of the above-entitled taxpayers during the years 1977, 1978, 1979 and 1980.
   (4) All records and documents of real estate purchased, owned or sold by either or both of the above-named taxpayers or on which the above-named taxpayers had an ownership or security interest, during the taxable years 1977, 1978, 1979 and 1980, including but not limited to deeds, closing statements and contracts.
   (5) All books, records, and documents regarding partnerships in which either or both of above-named taxpayers was a partner or in which the above-named taxpayers had an ownership interest, during the years 1977, 1978, 1979 and 1980.
   (6) All records of life, health, etc., insurance policies owned by or maintained by either or both of the above-named taxpayers during the years 1977, 1978, 1979 and 1980.
   (7) Any and all other records, books, documents, and receipts regarding wages, salaries, tips, fees, commissions, and any other compensation for services (including the receipt of other property, interest, rental, royalty and dividend income, alimony, annuities, income from life insurance policies and endowment contracts, pensions, income from discharge of indebtedness, distributive shares of partnership gross income, and income from an estate or trust.

pose for which they were issued. The taxpayer vigorously asserts that the summonses should not be enforced because they were issued for an improper purpose. Specifically, taxpayer contends that the sole purpose of the summonses was to gather evidence for use in a criminal prosecution of the taxpayer. *See United States v. LaSalle National Bank*, 437 U.S. 298, 316, 98 S.Ct. 2357, 2367, 57 L.Ed.2d 221 (1978). The government, to the contrary, maintains that the summonses were issued in an attempt to learn whether taxpayer has incurred a civil tax liability.

█ The taxpayer bears the burden of demonstrating that the government's purpose in issuing the summons was improper. *Id.* Clearly, the burden is a heavy one. The taxpayer must prove that the government's *only* motivation in issuing the summons was to gather information for a subsequent criminal prosecution. Even a showing by the taxpayer that the agent's sole motivation was for criminal purposes is not dispositive. *Id.* 437 U.S. at 319, 98 S.Ct. at 2368. Rather, the taxpayer must demonstrate that the Internal Revenue Service, in "an institutional sense," has abandoned any interest in recovering the taxpayer's civil liability. In fact, it has been held that "before the investigating agent completes his investigation the summons is 'virtually unassailable.'" *United States v. Harris*, 628 F.2d 875, 882 (5th Cir. 1980).

█ The taxpayer attempts to meet her burden by juxtaposing the prior criminal investigation relating to possible preparer infractions with the current investigation relating to her personal tax liability. The taxpayer equates the prior criminal investigation with the present civil investigation. This tactic fails. Clearly, the civil investigation now underway is separate and independent from the prior criminal inquiry.

The evidence adduced at the hearing revealed that Agent Reedy, the revenue agent in charge of the case, has the responsibility of examining filed returns to ascertain whether a civil tax liability exists. Agent Reedy further revealed that since she had inadequate information with which

to determine the taxpayer's income for various years, she issued the instant summonses which were designed to provide her with the appropriate information. Agent Reedy's investigation into the taxpayer's civil tax liability is not complete and no referral of the case has been made to the criminal division. The Court believes Agent Reedy's testimony and finds that the summonses were not issued for an improper purpose within the meaning of that term as set forth in *LaSalle*. Therefore, the summonses are enforceable in the absence of the taxpayer's assertion of a valid privilege.

## II. FIFTH AMENDMENT PRIVILEGE

In the case at bar, the taxpayer claims the documents and records requested by the summonses are privileged under the fifth amendment to the United States Constitution. Initially, the government challenges the taxpayer's right to invoke the privilege in the context of this case. The government urges the Court to apply the well-settled rule that one who possesses documents of corporations, partnerships, associations, or other legal entities may not rely on the fifth amendment's shield and may be compelled to produce the requested documents. *See Bellis v. United States*, 417 U.S. 85, 88, 94 S.Ct. 2179, 2182, 40 L.Ed.2d 678 (1974). Here, however, the taxpayer asserts that she operated her business of preparing income tax returns as a sole proprietorship and that she is, therefore, entitled to invoke the fifth amendment. *Id.* 417 U.S. at 87–88, 94 S.Ct. at 2182. Thus, the question becomes one of fact; whether the taxpayer operated her business in the form of a sole proprietorship.

A review of the evidence causes the Court to find that the taxpayer did, in fact, operate as a sole proprietorship. The Court heard testimony to that effect from three separate witnesses, including the taxpayer's tax attorney, Mr. Blackburn. Mr. Blackburn stated that the taxpayer is unincorporated and files her income tax returns under Schedule C, which indicates that the taxpayer is a sole proprietor. As the government provided no significant evi-

dence to the contrary, the Court can reach no other result. Therefore, the Court holds that the organizational makeup of the taxpayer's business does not impede her reliance upon the fifth amendment privilege.

■■■ The government raises an additional reason for precluding the taxpayer from asserting a fifth amendment, self-incrimination claim. The government asserts that since the documents were not in her possession, the taxpayer has no standing to raise the fifth amendment privilege. The Court agrees. As stated in *Couch v. United States*, 409 U.S. 322, 328, 93 S.Ct. 611, 615, 34 L.Ed.2d 548 (1973), "the Fifth Amendment privilege is a *personal* privilege: it adheres basically to the person, not to information that may incriminate him." In *Couch*, as in the instant case, the actual recipient of the summons made no claim that he may be incriminated by the production. Moreover, the taxpayer is not compelled by the summons to do anything. *Fisher v. United States*, 425 U.S. 391, 402, 96 S.Ct. 1569, 1576, 48 L.Ed.2d 39 (1976), reiterated this principle, stating that "compelled production of documents from an attorney does not implicate whatever Fifth Amendment privilege the taxpayer might have enjoyed from being compelled to produce them himself." Thus, the taxpayer's direct assertion of the fifth amendment in this action is improper.

The fact that the taxpayer has intervened in the instant action pursuant to 26 U.S.C. § 7609(b)(1) does not alter the above conclusion. In *United States v. Equitable Trust Company*, 611 F.2d 492, 495 (4th Cir. 1979), *cert. denied, sub nom. DiVivo v. United States*, 445 U.S. 950, 100 S.Ct. 1599, 63 L.Ed.2d 785 (1980), an Internal Revenue Service summons enforcement case similar to the case at bar, the court held that the "right of intervention is . . . procedural, not substantive." The court further indicated that "§ 7609(b)(1) does not displace traditional principles of standing and does not permit a litigant to invoke rights belonging to someone else." *See also United States v. Daffin*, 653 F.2d 121 (4th Cir. 1981); *United States v. Jones*, 630 F.2d 1073 (5th Cir.

1980); *United States v. Osborn*, 561 F.2d 1334 (9th Cir. 1977).

Although the taxpayer may not raise the fifth amendment question directly, the taxpayer's attempt to avoid having her records produced is not at an end. As recognized in *Fisher*, insofar as private information not obtained through compelled self-incriminating testimony is legally protected, its protection must stem from other sources. Here, as in *Fisher*, the attorney-client privilege is the only possible source of protection available to the taxpayer. The Court now turns to the merits of the taxpayer's claim of attorney-client privilege.

## III. ATTORNEY–CLIENT PRIVILEGE

■ The Court must determine whether the numerous documents in question, having been transferred by the taxpayer to her attorney, are subject to the attorney-client privilege. All of the documents covered by the summonses were in existence at the time the taxpayer sought the attorney's advice. For purposes of this discussion they are termed "preexisting documents." The Fifth Circuit, in *United States v. Davis*, 636 F.2d 1028, 1040 (5th Cir.), *cert. denied,* —— U.S. ——, 102 S.Ct. 320, 70 L.Ed.2d 162 (1981), held that:

> [P]reexisting documents transferred to an attorney are protected by the attorney-client privilege only if two conditions are met. First, the usual common-law prerequisites for the privilege must be satisfied: the information in the documents must be confidential and the transfer must have been made to obtain legal advice. Second, the documents must have been privileged from production in the client's hands, either at common law or under the fifth amendment.

Thus, the Court must undertake this two-step inquiry to determine whether the individual documents are privileged.

Before beginning a document-by-document analysis, further evaluation of the standards to be employed is required. The common-law requirements for the attorney-client privilege are rather straightforward and the Court will not elaborate in that

regard at this time. With respect to the second prong—that the documents were privileged in the hands of the taxpayer at the time of the transfer—the only possible privilege available to the taxpayer is the fifth amendment claim. That is, the taxpayer must show that before she transferred the documents to Mr. Boone, she was protected by the right against self-incrimination from producing the documents. The standards to be used in evaluating this claim will now be addressed.

In interpreting the fifth amendment self-incrimination clause as applied to compelled production of documents, the Supreme Court has constructed two basic frameworks for analysis. The first, as described in *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976), deals with the compulsion of testimony involved in the act of producing the documents. The second form of analysis, enunciated in *Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), involves the concept of privacy in one's personal papers. As these diverse forms of analysis have been construed as being not mutually exclusive of one another, *United States v. Davis*, 636 F.2d at 1042, the Court must examine the case at bar in light of each.

As noted, *Fisher* analyzed the act of producing the documents. The act of producing documents: (1) acknowledges the existence of the documents; (2) acknowledges the taxpayer's possession and control of the documents; and (3) indicates the taxpayer's belief that the documents are the ones described in the subpoena. *United States v. Miller*, 660 F.2d 563, 566 (5th Cir. 1981). The *Fisher* court was not called upon to determine whether the implicit admission of the first two aspects might rise to the level of testimony within the protection of the fifth amendment as the court concluded that the existence and location of the documents there was a "foregone conclusion." For a similar reason, the Court need not address the question as to the types of documents in question, nor as to their location. The Court must face only the third prong of the *Fisher* analysis—often referred to as "implicit authentication" by the taxpayer. The fact that a taxpayer turned over certain documents in response to a particular summons would unquestionably authenticate these documents for future use at trial. The Fifth Circuit has recognized this problem and has stated that "it should not be a ground for refusing to produce the documents as long as the fact of compliance with the summons is not introduced into evidence at the incriminated party's trial." *United States v. Davis*, 636 F.2d at 1041. Thus, the Court concludes that the act of producing the documents does not, in the instant case, impinge upon the taxpayer's fifth amendment protections.

Having found that the *Fisher* analysis would not have caused the documents to have been privileged in the hands of the taxpayer, the Court must analyze the issue in light of the *Boyd* rationale. The central teaching of *Boyd* is that the seizure of one's private books and papers to be used in evidence against one is not substantially different from compelling one to be a witness against oneself. *Boyd v. United States*, 116 U.S. at 633, 6 S.Ct. at 533. Although several aspects of *Boyd* have been overruled, this core perception remains. The Fifth Circuit, after analyzing *Boyd* and the numerous decisions thereafter, has expressed what it considers to be the cumulative rule in this area. In *United States v. Davis*, 636 F.2d at 1043, the court held that:

[A]ny incriminating papers in the actual or constructive possession of an individual, which he holds in his individual capacity, rather than in a representative capacity, and which he himself wrote or which were written under his immediate supervision, are absolutely protected by the *Boyd* principle from production by subpoena or equivalent process, regardless of whether they are business-related or more inherently personal in content.

It is now apparent that only if the common-law requirements of the attorney-client privilege are present, and the documents are of the nature described immediately above, may the taxpayer properly request that the documents not be produced. Given this, the Court now turns to the individual documents in question.

## IV. ANALYSIS OF INDIVIDUAL DOCUMENTS

### A. *Receipts*

■ The Court begins its analysis by examining numerous receipts. For ease of reference, the Court will use Exhibit C, introduced into evidence at the hearing and entitled Inventory of Personal Records of Louise T. Newton, as a means of identifying the various documents. The categories "1977 Receipts," "1978 Receipts," and "1979 Receipts" generally contain printed receipts for purchases made by someone, presumably the taxpayer. The Court finds that these printed receipts are not privileged and that they may properly be compelled by the government. Clearly, there is no question that the documents were transferred by the taxpayer for the purpose of obtaining legal advice. This was uncontested as to all records and bears no further repetition in subsequent analyses. However, the remainder of the above-described test poses more difficulty for the taxpayer. There was no showing that the receipts in question were confidential and the Court is unable to ascertain that fact from an inspection of the documents. It is well-settled that the burden is on the proponent of the attorney-client privilege to demonstrate its applicability. Where, as here, the Court has not been provided with sufficient facts to state with reasonable certainty that the privilege applies, the burden is not met. *Federal Trade Commission v. TRW, Inc.*, 628 F.2d 207, 213 (D.C.Cir.1980). *See also In re Katz*, 623 F.2d 122, 125 (2d Cir. 1980); *United States v. Landof*, 591 F.2d 36, 38 (9th Cir. 1978); *In re Grand Jury Proceedings*, 73 F.R.D. 647, 651 (M.D.Fla.1977).

In addition, the Court finds that even if the documents had been confidential, they would not be privileged in this context. Even the most cursory inspection of the printed receipts reveals that they were not prepared by the taxpayer, nor were they prepared under her immediate supervision. For this reason as well, the Court finds that the printed receipts in the above-named categories are not privileged.

The subcategory "Bank" requires additional analysis. The documents found within this classification include several forms of bank statements such as loan disbursement documents, insufficient funds notices, transaction receipts, and deposit slips. It is again apparent that all items other than the deposit slips were prepared by the bank and sent to the taxpayer or her sole proprietorship. These documents are not privileged. As to the deposit slips, it appears as if they are copies of handwritten lists of checks deposited by someone into the taxpayer's account. There is no indication as to the maker of the document. Even assuming that the taxpayer had prepared the deposit slips, the Court must also find that the documents were confidential in order to hold them privileged. Not only was there no evidence presented which would indicate confidentiality, the fact that the document was released to the bank causes the Court to find to the contrary. Thus, the documents within the "Bank" subcategory are not privileged.

The same conclusion is reached with respect to the documents found within the categories entitled "Paid Receipts/Bills" and "Paid Receipts." There is no evidence that the documents in question were confidential, and there is no evidence that the documents were prepared by the taxpayer or under her immediate supervision. The Court, in examining the documents, concludes that they are not privileged.

### B. *Money Receipts Books*

The Court next considered the nineteen books which contain the receipts given to the taxpayer's clients after the client had paid for the service. The books reveal, in the form of a carbon copy of the receipt issued to the client, the actual transaction between the taxpayer, or one of her associates, and her client. Each receipt indicates the name of the client, the date on which the service was performed, and the amount received from the client.

In determining whether any or all of the books are privileged, the Court must again look to the confidentiality of the information contained therein as well as to who

prepared the documents. In inspecting the various books, the Court notes that most of the books contain more than one type of handwriting. Moreover, a large number of the receipts in many of the books apparently were not prepared by the taxpayer, as other names are indicated on the bottom of the receipts. Also, many of the entries are unsigned, leaving the Court uncertain as to the author of these receipts. Finally, the Court notes an additional reason for concluding that the information cannot be considered confidential, that being that the clients were each given the original receipt. Thus, the information contained in the receipts books was apparently disclosed to numerous persons within the taxpayer's office, in addition to the clients themselves. These are the conclusions the Court was able to draw after examining the books; the taxpayer, in failing to present any evidence to the contrary, failed to meet her burden of demonstrating that the attorney-client privilege is applicable to the receipts books. The Court, therefore, holds that none of the receipts books are privileged.

C. *Appointment Records and Client Lists*

■ The related categories entitled "Newton—List of Clients," "Newton—Appointment Sheets," and "Appointment Record Book" next received the Court's scrutiny. "Newton—List of Clients" is precisely what its name implies; it is an alphabetized, handwritten list, purportedly of the taxpayer's clients for the period from 1976 to 1978. Here again, the Court was presented with no evidence indicating the source, purpose, or author of the list, nor indicating who had access to the list. Though the taxpayer arguably failed to meet her burden of proving the applicability of the privilege, the Court holds that the client list is privileged in the context of this case.

The characteristics of the document itself lead the Court to this result. The list appears to have been prepared by only one person, though the Court cannot be certain that it was the taxpayer. Nevertheless, the Court cannot imagine a scenario in which the list was not created at the direction of the taxpayer. As to the confidentiality, the Court finds that one's client list tends, by its nature, not to be loosely disseminated. Therefore, the Court concludes that the documents contained within "Newton—List of Clients" are privileged and may not be compelled by the government.

■ The "Appointment Record Book" is a black, vinyl-covered document containing a day-by-day list of appointments. Each appointment notation includes, in addition to the client's name and telephone number, various remarks relating to the appointment. Again, as with the other documents discussed above, the Court notes that no evidence was received that revealed who prepared, maintained, and used the document. An examination of the document reveals, at a minimum, four or five different styles of handwriting contained within the book. Additionally, a reading of the various notations found therein causes the Court to believe that numerous persons used the book as their appointment calendar. Thus, the information within the book cannot be considered confidential; nor is the Court convinced that the taxpayer prepared the entries found in the book or that the entries were prepared under the taxpayer's immediate supervision. Thus, the book is not privileged and the government may compel its production. The same conclusion is reached with respect to the group of loose-leaf sheets found in the book's back cover.

■ The Court also finds that the "Newton—Appointment Sheets" category is not privileged. The appointment sheets, loose-leaf pages containing appointment records, indicate the employee that each client was to see. The sheets are arranged in columns with various employees' names listed at the top of each. This observation alone causes the Court to find that several persons had access to these sheets, thereby destroying their confidential nature. Furthermore, the Court again notes that no evidence to the contrary was presented. The appointment sheets are not privileged.

### D. *Cancelled Checks and Check Stubs*

With respect to the categories "Cancelled Checks" and "Check Stubs," the Court finds them not privileged from production. The cancelled checks, by their very nature, are certainly not confidential. Their contents have been disclosed not only to the payee, but also to the bank. As to the check stubs, there is no indication as to the identity of their preparer, nor can the Court ascertain whether they have been held confidentially. Unlike the taxpayer's list of clients, the Court, without the benefit of any evidence to that effect, will not conclude that the check stubs are confidential. The documents within these categories are not privileged and the government may properly compel their production.

### E. *Other Documents*

The remaining categories are "Newton—Loans," "Newton—Savings Account," and "Newton—Miscellaneous." The loans and the savings account categories contain financial records which were prepared by various institutions, not by the taxpayer. These documents could not have been protected under the fifth amendment while in the taxpayer's hands and are similarly unprotected by the attorney-client privilege. The miscellaneous category contains a document prepared by the Internal Revenue Service which pertains to a correction of the taxpayer's estimated tax, as well as numerous documents fitting into the "Bank" subcategory discussed above. As to the document from the Internal Revenue Service, the Court finds that it was not written by the taxpayer, nor was it written under her immediate supervision. Thus, it is not subject to fifth amendment protection and is not privileged in this context. As to the remainder of the documents, the Court finds such documents not privileged, and will not restate its earlier reasoning. The documents are similar to those described in the "Bank" subcategory and the same conclusion is mandated.

### V. OVERBREADTH OF THE SUMMONSES

The taxpayer raised one further issue in opposing the petition to enforce the summonses, contending that the summonses were defective due to their overbreadth. A summons is overbroad if it does not advise the summoned party what is required of him to respond adequately to the summons. *See United States v. Wyatt*, 637 F.2d 293 (5th Cir. 1981). Here, the summonses set forth with ample clarity those items to be produced. No evidence was presented which causes the Court to conclude that the summonses were vague or confusing. Mr. Skinner was able to prepare a concise inventory of the records within his possession which were covered by the summons. The overbreadth argument is without merit.

The Court will on this date enter a Judgment in accordance with this Opinion.

### JUDGMENT

For the reasons stated in the Opinion entered herein on this date, it is

ADJUDGED:

1. That the Petition to Enforce Internal Revenue Service Summons, filed herein on February 26, 1982, is denied as to the documents contained within the category "Newton—List of Clients," as described in the Opinion entered on this date, and the respondent is relieved from compliance with the summons with respect to the documents contained within the category "Newton—List of Clients."

2. That as to all other documents, the Petition to Enforce Internal Revenue Service Summons, filed herein on February 26, 1982, is granted, and the respondent is directed to comply with the summons within five (5) days of the entry of this order.