Sheryl Kay AIKEN, Plaintiff,

v.

**TEXAS FARM BUREAU MUTUAL INSURANCE COMPANY, et al., Defendants.**

Civ. A. No. 92–CV–363.

United States District Court,
E.D. Texas,
Beaumont Division.

July 20, 1993.

Michael D. Matthews, Griffin & Matthews, Beaumont, TX, Jay Lock Arnold, Liberty, TX, for plaintiff.

Lawrence L. Germer, Paul W. Gertz, Orgain Bell & Tucker, Beaumont, TX, for defendants Texas Farm, Southern Farm.

Brent Clifton Howard, Grainger Howard Davis & Ace, Tyler, TX, for defendant Robert Ites.

Guadalupe R. Flores, Beaumont, TX, for defendant William N. Graham.

Lipscomb Norvell, Benckenstein Norvell & Nathan, Beaumont, TX, for defendant Nacogdoches Co. Farm.

Galen R. Alderman, Jr., Zeleskey, Cornelius, Halmark, Roper & Hicks, Lufkin, TX, for defendant City of Nacogdoches.

David K. Boyer, Beaumont, TX, for defendant William N. Graham.

Iris Hefter Robinson, C. Mark Stratton, Hirsch Glover Robinson & Sheiness, Houston, TX, for defendant Joe A. Sweat.

William Spencer Warren, Center, TX, for defendant Harold Don Lackey.

## MEMORANDUM OPINION AND ORDER

COBB, District Judge.

Before the court are twenty-nine audiotapes [1] of defendant William Graham submitted by defendants Texas Farm Bureau Mutual Insurance Company (TFB) and Southern Farm Bureau Casualty Insurance Company (SFB), as per a joint defense agreement of December 1992, for *in camera* inspection to determine whether they are discoverable to the plaintiff under the attorney-client, work product, and joint defense privileges.

The audiotapes are of telephone conversations made from the time the facts that form the basis of this suit arose, when defendant Graham was under contract with defendant Texas Farm Bureau to investigate possible defalcation in its Nacogdoches office, to a few months after plaintiff, an employee in that

---

1. Some 270 tapes were originally claimed privileged; all have been produced to plaintiff (including eight tapes at first withheld as "irrelevant conversation") or to the court for inspec- tion, with the exception of three tapes which were labelled "unintelligible" and are now in the process of being transcribed.

office, filed suit. They enshrine conversations initiated by Graham and recorded by him, apparently an habitual practice unknown to his conversants, who include attorneys for TFB, SFB and defendant Sweat, officers of TFB and SFB, and other co-defendants and third parties.

Defendants assert these privileges as follows: 1) the attorney-client privilege for the tapes numbered 19, 149, 264, 265, 268, 269, and 270; 2) the work product privilege for tapes 6, 11–16, 23, 25, 26, 28–31, 118, 125, 127, 136, 261, 262, 266, and 271, (as well as for 19, 149, 265 and 270); and 3) the joint defense privilege for tapes 6, 11–16, 23, 25, 26, 28–31, 125, 136, 262, 266 and 271.

### I. Attorney–Client Privilege

■ The purpose of the attorney-client privilege is "to protect confidential communications and to protect the attorney-client relationship". *Shields v. Sturm, Ruger & Company*, 864 F.2d 379, 382 (5th Cir.1989). Consequently, confidential communications by a client to his attorney for the purpose of obtaining legal advice, and by an attorney to his client if it would tend to disclose the client's confidential communications, are not discoverable. *Hodges, Grant & Kaufman v. United States*, 768 F.2d 719, 720–21 (5th Cir.1985) (Rubin, J.) (confidentiality); *Fuller v. State*, 835 S.W.2d 768 (Tex.App.—Eastland, Jul. 30, 1992). *See generally, United States v. Pipkins*, 528 F.2d 559, 562 (5th Cir.1976). The attorney-client privilege is waived if the confidential communication has been disclosed to a third party, *id.*, unless made to attorneys for co-parties in order to further a joint or common interest (known as the common interest rule or the joint defense privilege). *In re Auclair*, 961 F.2d 65, 69 (5th Cir.1992). *See discussion infra.*

Applying the analysis given above, the court agrees with defendants' assertion of the attorney-client privilege for tapes 19, 265, and 270 [Bates Nos. 302821–302834; 302852–302856]; and finds the privilege waived for tapes 149, 264, 268, and 269.

■ Tape 19 records conversations with defendant SFB's general counsel relevant to SFB's best interest in this suit *vis a vis* Graham's desire to appear *pro se* and clearly falls under the privilege. Tape 265 and that portion of tape 270 indicated above enshrine Graham's preliminary discussions with attorneys in order to obtain counsel. McCormick on Evidence, § 88 (Cleary 3d ed. 1984) ("communications made in the course of preliminary discussion with a view of employing the lawyer are privileged though employment is not … accepted"). Tapes 149, 264, 268, and 269 were recorded prior to April 1992 and, according to the testimony of defendant Graham, were disclosed to federal law enforcement officers investigating defendant Lackey, thus waiving the privilege. *Hodges, Grant & Kaufman v. United States, supra.*

### II. Work Product Privilege

■ The work product privilege exists to promote the adversary system by enabling attorneys to prepare cases without fear that their work product will be used against their clients. *Hickman v. Taylor*, 329 U.S. 495, 510–11, 67 S.Ct. 385, 393–94, 91 L.Ed. 451 (1947); *Shields v. Sturm, supra.*[2] The privilege extends qualified immunity to 1) "documents or tangible things," 2) "prepared in anticipation of litigation or for trial," 3) "by or for another party or by or for that other party's representative." Fed.R.Civ.P. 26(b)(3); *United States v. Noble*, 422 U.S. 225, 239, 95 S.Ct. 2160, 2170, 45 L.Ed.2d 141 (1975) (qualified immunity); *see Leonen v. Johns–Manville*, 135 F.R.D. 94, 96 (D.N.J. 1990) (state formulations of privilege inapplicable in federal court).

Of the recorded conversations for which this privilege is claimed, some took place during defendant Graham's investigation of TFB's Nacogdoches office, when he was under contract with TFB (Tapes 15, 136, and

2. Given the purpose of the work product privilege, "mere voluntary disclosure to a third person is insufficient in itself to waive" it. *Shields v. Sturm* at 382. The touchstone of inquiry seems to be whether the prior disclosure had been made to a present adversary: if not, the privilege survives. *See id.; United States v. American Tel. & Tel. Co.*, 642 F.2d 1285, 1299 (D.C.Cir.1980) (information shared with a government agency having a common interest against third party does not constitute waiver of work product privilege). Consequently, under our facts, Graham's disclosure to federal agencies does not destroy the work product privilege.

149); some took place after his employment, when TFB was anticipating litigation with defendant Lackey (Tapes 6, 14, 25, 29, 118, and 127) and with plaintiff in a suit before the Texas Employment Commission (Tapes 23, 26, 30, and 125); and some in anticipation and during initiation of this suit (Tapes 11, 12, 13, 16, 19, 28, 31, 261, 262, 265, 266, 270, and 271).

Applying the analysis given above, the court agrees with defendants' assertion of the work product privilege for the last group of tapes listed *supra* and disagrees as to the others.

■ According to Graham's testimony, the recordings were prepared by him, on his own behalf, apparently without the knowledge of any of the conversants, as part of an habitual practice of recording ALL telephone conversations (e.g., Tape 26, conversation with a relative). None of these recordings were prepared at the direction or request of counsel or client TFB, none were turned over to or in the possession of counsel or client TFB, nothing before the court indicates they were used by counsel or client TFB in trial preparation, and most were prepared after Graham's employment with TFB had terminated.[3]

■ Evidentiary privileges are to be strictly construed. *University of Penn. v. EEOC*, 493 U.S. 182, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990). Consequently, with the exception of those conversations recorded by Graham in anticipation of this suit against him, (Tapes 11, 12, 13, 16, 19, 28, 31, 261, 262, 265, 266, 270, and 271),[4] the court finds that these conversations were not recorded or "prepared in anticipation of litigation" and so are not work product under the rule. *Cf. Mason C. Day Excavating v. Lumbermens Mut. Cas.*, 143 F.R.D. 601, 606 (M.D.N.C. 1992) (tape recordings are work product when in attorney's possession, prepared by attorney's client, at attorney's request, in anticipation of litigation); *see* 8 Wright & Miller, Federal Practice and Procedure § 2026 at 129 (1993 Supplement) ("If documents are not trial preparation material, as defined in Rule 26(b)(3), they are not entitled to any special protection from discovery under that rule even though they contain mental impressions, conclusions, and legal theories.")

### III. Joint Defense Privilege

■ The joint defense privilege extends the attorney-client privilege to any third party made privy to privileged communications if that party "has a common legal interest with respect to the subject matter of the communication." *Auclair, supra*, at 69; *In re LTV Securities Litigation*, 89 F.R.D. 595, 604 (N.D.Tex.1981) (Higginbotham, J.) ("disclosure of privileged information by an attorney to actual or potential co-defendants"); *Abraham Construction Corp. v. Armco Steel Corp.*, 559 F.2d 250, 253 (5th Cir.1977) (extends to civil proceedings). This privilege encompasses shared communications between various co-defendants, actual or potential, and their attorneys, prompted by threatened or actual, civil or criminal proceedings, "to the extent that they concern common issues and are intended to facilitate representation in possible subsequent proceedings," *In re LTV Securities Litigation*, or "whenever the communication was made in order to facilitate the rendition of legal services to each of the clients involved in the conference." Weinstein's Evidence § 503(b)[06] (1992). *See Ryals v. Canales*, 767 S.W.2d 226, 228 (Tex.Ct.App.—Dallas, 1989, no writ).

■ After painful review of the tapes for which this privilege is claimed, it is quite clear to the court that these conversations (recorded after defendants' joint defense agreement was signed) were not intended to, and do not in fact, "facilitate representation"

---

**3.** The mere transfer of these tapes to attorneys under a joint defense agreement does not work to extend the privilege unless the privilege applied before the transfer. *Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976); *United States v. Blackburn*, 538 F.Supp. 1376, 1380 (M.D.Fla.1982).

**4.** The privilege extends to things prepared for litigation or trial by or for the adverse party himself. 8 Wright & Miller, Federal Practice and Procedure § 2024 at 207 (1970).

or "the rendition of legal services": they are, quite simply, examples of schmoozing.[5]

Given the complicated factual basis of this lawsuit and the difficulties already encountered in discovery, the court finds that plaintiff has made a sufficient showing of need and, for the reasons given above, orders production of the following tapes: 6, 14, 15, 23, 25, 26, 29, 30, 118, 125, 127, 136, 149, 264, 268, and 269.

---

**5.** The defendants' joint defense agreement does not work to extend the privilege. *See* Note 3, *supra.*