Revised November 13, 2001

**IN THE UNITED STATES COURT OF APPEALS
FOR THE  FIFTH CIRCUIT**

_____

No. 01-40421

_____

In re: SANTA FE INTERNATIONAL CORPORATION,

Petitioner.

_____

Petition for Writ of Mandamus to the United States
District Court for the Southern District of Texas

_____

November 7, 2001

Before SMITH, BENAVIDES, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

Santa Fe International Corporation ("Santa Fe") petitions for a writ of mandamus directing the district court to vacate its order requiring Santa Fe to produce a document for discovery and rejecting Santa Fe's "common legal interest" attorney-client privilege claim.[1] We deny the petition because the district court's ruling was not clearly and indisputably wrong.

_____

[1]Although the litigation underlying this discovery dispute involves multiple defendants and numerous documents, this mandamus petition concerns only Santa Fe's claim of privilege as to one document created in 1991.  See infra at 8-9.

## I.

Plaintiffs, who are present and former offshore drilling workers for Santa Fe and some twenty-one other offshore drilling corporations, filed this action on August 14, 2000, naming those companies as defendants. The complaint alleges that the defendants secretly met over the past ten years to set, stabilize, maintain, or limit the wages and benefits paid to offshore drilling employees. The plaintiffs seek certification of a class of such employees, damages for defendants' alleged antitrust violations, and a permanent injunction to prevent such conduct in the future.

On January 3, 2001, proceedings were held before the district court wherein all defendants, including Santa Fe, were represented by Finis Cowan and David Beck, who said they had been designated as the spokespersons for the defendants. At that hearing the parties presented a joint discovery and case management plan which they recommended to the court. The court accepted the plan with regard to class certification and established the following guidelines for resolving any discovery disputes:

> All right. If anything looms as a discovery hassle, don't file anything. I'm going to be here continuously. Just call Felicia and let her know there's a problem and I'll accommodate you with an emergency hearing or a telephone call or whatever will save you expense and inconvenience.

Plaintiffs' counsel and the spokesperson-attorneys for the defendants indicated their approval and agreement with this

expedited discovery dispute resolution procedure.[2]

On March 8, 2001, Ross Citti, who had enrolled as counsel for Global Marine Drilling Co., scheduled a hearing in accordance with the trial court's guidelines for discovery disputes. Mr. Citti faxed plaintiffs' counsel the following letter:

> This is to advise you that the Court has scheduled a hearing to resolve outstanding discovery issues in the above matter for 11:00 a.m. on Friday March 9, 2001.

On March 9, 2001, at a discovery hearing in open court, several outstanding discovery issues were resolved pursuant to the March 8 letter of notice issued by Mr. Citti. Mr. Anthony Buzbee and Mr. Richard Melancon appeared for the plaintiffs. Mr. Citti appeared for defendant Global Marine; Mr. Steve Roberts appeared for defendant Nabors Drilling; and Mr. James Watkins appeared for defendant Marine Drilling.

At the discovery hearing, without drawing any objection by the defendants' attorneys, the plaintiffs' counsel asked the district court to rule on whether the defendants were required to turn over documents that had been withheld, giving as an example a memorandum

---

[2]See generally Fed. R. Civ. P. 16(c)("At any [pretrial] conference under this rule consideration may be given, and the court may take appropriate action, with respect to . . . (6) the control and scheduling of discovery, including orders affecting disclosures and discovery pursuant to Rule 26 and Rules 29 through 37; . . . (12) the need for adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems; . . . (16)such other matters as may facilitate the just, speedy, and inexpensive disposition of the action."); Fed. R. Civ. P. 23(d).

"which they circulated [in 1994] about their antitrust exposure for doing what they were doing. . . ."[3] Mr. Citti, evidently speaking for all of the defendants, informed the court that "there's basically three categories of documents that have been withheld and we've provided them with the privilege log. The first category of documents are correspondence from general counsel to employees of the individual companies." The court interjected, "That's privileged." Mr. Citti continued:

> The second category are mainly E-mails and they are discussions between employees and an individual company talking about the memo from the general counsel that they just received. . . . The third category . . . are documents from the general counsel of—we'll say Global Marine because that is an actual example. General counsel at Global Marine sent an opinion letter to somebody within Global Marine that has to do with the issues that are involved in this case, potential antitrust exposure if you do this and do that and do the

---

[3] Notwithstanding the dissent's contrary view, the plaintiffs intended to seek discovery of documents at the March 9 hearing, and not merely an in camera review. Therefore, the plaintiffs did not "get more than they were asking for." Mr. Buzbee asked Mr. Citti the day before the hearing to bring the documents with him so that the judge could look at them if necessary. But the record clearly reflects that, from the beginning, Mr. Buzbee's obvious, ultimate goal was discovery of the documents. At the hearing, Mr. Buzbee stated: "And the only other issue that I have, Your Honor, if the Court will allow it, is [that] the Defendants just aren't turning over the documents . . . with no legal basis for withholding them." In its petition for mandamus, Santa Fe suggests that the court should have reviewed the defendants' documents in camera. However, it was incumbent on the defendants to ask for an in camera review if they believed the documents contained critical intrinsic evidence of privilege. They apparently could not represent to the court that the documents contained such features, or perhaps decided, as a matter of strategy, that the court should not view these documents prior to its ruling on class certification, and therefore did not ask for an in camera review.

4

other and don't do the third thing. That letter was then shared with general counsel of another drilling contractor or human relations people who have an interest in this sort of thing. It was done in a confidential way. It was--it was--these memos, communications were done with the understanding that it was legal opinion from general counsel in another company who had a common interest in preserving and staving off litigation of this type.

The district court ruled that the first two categories were privileged and that any attempt to obtain them would be quashed. With respect to the third, however, the court ruled: "I think once the documents albeit the confidential one from general counsel within the company is transmitted to another company, you voluntarily waive any privilege. Then it becomes the precise genesis of antitrust." The court ordered the production of the third category of documents "for counsel's eyes only," and provided for their return after the litigation, without retention of copies or extracted data.[4]

Contrary to the dissent's assertion, the district court did not

---

[4]The dissent claims that because the plaintiffs did not follow the formalities of the Southern District of Texas Local Rules 7.1 and 7.3, which require opposed motions to be in writing, supported by authority, and filed at least twenty days before submission, the judge's ruling on the plaintiffs' discovery request was erroneous. However, Local Rule 7.8 allows the district court to "in its discretion, on its own motion or upon application, entertain and decide any motion, shorten or extend time periods, and request or permit additional authority or supporting material." As noted above, the district court had outlined rules for a streamlined discovery dispute process which bypassed the formalities of the local rules and to which all parties, including Santa Fe (through its formal representatives, Mr. Cowan and Mr. Beck), agreed.

"summarily rule that [the attorney-client] privilege is always waived when documents are transmitted to a third party, thus eradicating any common interest privilege in the face of this circuit's law to the contrary. . . ." Instead, the district court concluded that documents falling within the third category of communications described by Mr. Citti were not privileged because there had been no showing that at the time the communications were made--many years before the present litigation--the employers were potential co-defendants acting under an actual or perceived threat of litigation.[5]

After the March 9, 2001 discovery hearing, Santa Fe joined defendants Global Marine and Noble Drilling in a motion for reconsideration and clarification of the trial court's rulings. In this motion, Santa Fe claimed for the first time a "common interest privilege," and sought protection for its disclosure to third parties of a 1991 memorandum prepared for Santa Fe by its in-house counsel. Santa Fe attached to the motion an affidavit by its in-

---

[5]The dissent's argument that the district court was obliged to examine each document before ruling is not meritorious. The argument fails to take into account that the claimants of the attorney-client privilege had the burden of demonstrating that each document withheld was entitled to protection. The defendants did nothing to show that the communications to third persons were made in anticipation of a common defense. On the contrary, the age of the communications, the lack of evidence of any common defense agreement, and Santa Fe's answers to plaintiffs' requests for admissions made a strong case against the common interest privilege claim. See infra at 15-16.

house counsel that described the 1991 memorandum and its dissemination to other offshore drilling companies, which are now co-defendants with Santa Fe in the present case. In his affidavit, Santa Fe's counsel averred that:

> I have personal knowledge of attorney-client privileged communications between Santa Fe and myself, including a legal memorandum I drafted in May 1991 to Joe Boyd regarding certain legal issues related to the exchange of wage and benefit information among the Big 8 . . . as part of my duties as a legal counselor to Santa Fe. . . . The May 1991 legal memorandum provided legal advice to Santa Fe and was made in furtherance of Santa Fe's efforts to seek and obtain legal advice on issues in connection with Santa Fe's participation in wage and benefit surveys. . . . The May 1991 legal memorandum was circulated to certain members of the Big 8 and the contents of the memorandum were referenced in connection with a meeting of the IPA in 1999. . . . Santa Fe has maintained . . . the May 1991 legal memorandum as confidential. Santa Fe has not disclosed the May 1991 legal memorandum to anyone who did not have a common legal interest with Santa Fe in the communications. Specifically, the participants of the Big 8 and the IPA shared a common interest in complying with the antitrust laws and avoiding any liability in potential litigation for allegedly violating those laws. It was and is my understanding that those companies were all involved in making decisions concerning the guidelines they would adopt for participating together in wage and benefits surveys.

(Paragraph breaks and enumeration omitted).

The district court denied the motion for reconsideration. In responding to Santa Fe's petition for mandamus, as instructed by this court, the district court explained: "The affidavits submitted by Defendants along with their Motion for Reconsideration do not undermine but rather strengthen the Court's opinions in this regard.

These affidavits further clarify that the Defendants shared the allegedly privileged information years ago, in the absence of any active joint defense of litigation."[6]

## II.

Turning our attention directly to Santa Fe's claim for protection under the "common legal interest" extension of the attorney-client privilege ("CLI privilege"), we conclude that it has no merit.

## A.

A party asserting a privilege exemption from discovery bears the burden of demonstrating its applicability.[7]  Federal Rule of

---

[6]Contrary to the dissent's impression, the district court cited Fifth Circuit precedents--and not just "caselaw from other circuits"--demonstrating that Santa Fe's document did not fall within the scope of the common legal interest privilege.  See District Court's Response at 3-4 (citing Wilson P. Abraham Constr. Corp. v. Armco Steel Corp., 559 F.2d 250, 253 (5th Cir. 1977); In re Auclair, 961 F.2d 65, 70 (5th Cir. 1992); Hodges, Grant & Kaufmann v. United States, 768 F.2d 719, 721 (5th Cir. 1985)).  Those cases recognized the common legal interest privilege, but described its perimeter in a manner that excludes Santa Fe's claim.

[7]See generally 8 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2016.1 (2d ed. 1994).  See also Hodges, Grant & Kaufmann, 768 F.2d at 721.
Fifth Circuit cases clearly hold that the privilege claimant's burden extends to proof of preliminary facts showing that the matter is eligible for protection.  See, e.g., United States v. Rodriquez, 948 F.2d 914, 916 (5th Cir. 1991) ("As to the claimed violation of privilege, [defendant] has never indicated any document from the seized file which constituted a communication or described a communication between herself and her attorney.  The burden of establishing privilege rests on the party who invokes it.").

8

Civil Procedure 26(b)(5) provides that a party claiming a privilege "shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." In complex litigation, compliance with Rule 26(b)(5) is "usually accomplished by submission of a log identifying documents or other communications by date and by the names of the author(s) and recipient(s), and describing their general subject matter. . . ." MANUAL FOR COMPLEX LITIGATION (THIRD) § 21.431 (1995). On January 2, 2001, Santa Fe and the other defendants agreed to produce privilege logs at a future date. While some of the defendants complied with this agreement, Santa Fe failed to provide a privilege log identifying any document or communication.

The only express claim of privilege by Santa Fe came after the discovery hearing in its motion for reconsideration, which sought protection for the dissemination of its in-house counsel's 1991 memorandum. Thus, the disclosure of the 1991 memorandum to third persons is the only matter before this court on the petition for mandamus. After considering the record and briefs, we conclude that Santa Fe has failed to carry its burden of showing that this communication meets the established criteria for protection under the CLI privilege.

9

According to our circuit precedents, the two types of communications protected under the CLI privilege are: (1) communications between co-defendants in actual litigation and their counsel; see, e.g., Wilson P. Abraham Constr. Corp. v. Armco Steel Corp., 559 F.2d 250, 253 (5th Cir. 1977); and (2) communications between potential co-defendants and their counsel. See Hodges, Grant & Kaufmann v. United States, 768 F.2d 719, 721 (5th Cir. 1985); Aiken v. Texas Farm Bureau Mut. Ins. Co., 151 F.R.D. 621, 624 (E.D. Tx. 1993). With respect to the latter category, the term "potential" has not been clearly defined. However, because the privilege is "an obstacle to truthseeking," it must "be construed narrowly to effectuate necessary consultation between legal advisers and clients." In re LTV Sec. Litig., 89 F.R.D. 595, 606 (N.D. Tex. 1981)(Higginbotham, J.)(citing Garner v. Wolfinbarger, 430 F.2d 1093 (5th Cir. 1970)).

Considering that caveat, and in looking at other cases discussing the CLI privilege in this circuit, it appears that there must be a palpable threat of litigation at the time of the communication, rather than a mere awareness that one's questionable conduct might some day result in litigation, before communications between one possible future co-defendant and another, such as the ones here made between one horizontal competitor and another, could qualify for protection. For example, in Wilson P. Abraham Construction Corp. v. Armco Steel Corp., 559 F.2d 250, 253 (5th Cir.

10

1977), this court offered the following discussion of the privilege:

> The defendants persuasively argue that in a <u>joint defense</u> of [an actually filed] conspiracy charge, the counsel of each defendant is, in effect, the counsel of all for the purposes of invoking the attorney-client privilege in order to shield mutually shared confidences. We agree, and hold that when information is exchanged <u>between various co-defendants</u> and their attorneys that this exchange is not made for the purpose of allowing unlimited publication and use, but rather, the exchange is made for the limited purpose of assisting in their common cause.

(Emphasis added).

Later, in <u>Hodges, Grant & Kaufmann</u>, this court again discussed the privilege: "The [attorney-client] privilege is not . . . waived if a privileged communication is shared with a third person who has a common legal interest with respect to the subject matter of the communication." 768 F.2d at 721 (citing only <u>Abraham Constr.</u>, 559 F.2d at 253) (addressing communications between counsel for co-defendants during litigation). In <u>Hodges, Grant & Kaufmann</u>, the United States sought to discover from the defendant taxpayer a letter containing legal advice written by the defendant's attorney and addressed to the defendant and another individual. The defendant claimed that the letter was written to both recipients as the attorney's joint clients. Because the court lacked sufficient evidence to determine (1) whether the co-recipient of the letter was actually a client of the defendant's attorney at the time the communication was made, and (2) whether both were being represented jointly in a matter at the time the communication was made, it

11

remanded the case to the district court for further fact finding. Id. Thus, Hodges, Grant & Kaufmann does not support Santa Fe's claim of privilege because the court in that case narrowly construed "common legal interest" as referencing the interest of clients who are jointly-represented at the time of their attorney's communications to them. In the present case, Santa Fe and the third parties were not co-clients being jointly represented in ongoing litigation at the time the communications were made.

In In re Auclair, 961 F.2d 65, 69 (5th Cir. 1992), this court stated that the CLI privilege extends to communications made among persons "who consult an attorney together as a group with common interests seeking common representation." (Emphasis added). In Auclair, the privilege was found applicable to communications made in the face of imminent litigation involving multiple potential clients who jointly consulted with a single attorney while actively seeking legal representation in connection with a pending grand jury investigation.

Although we are not bound by them, we find two of our district courts' discussions of the CLI privilege helpful. In Aiken v. Texas Farm Bureau Mutual Insurance Co., 151 F.R.D. 621, 623 (E.D. Tex. 1993), the court stated: "The attorney-client privilege is waived if the confidential communication has been disclosed to a third party, unless made to attorneys for co-parties in order to further a joint or common interest (known as the common interest rule or the

joint defense privilege)" (citing <u>Auclair</u>, 961 F.2d at 69).  The

opinion further explains that:

> This privilege encompasses shared communications between various co-defendants, actual or potential, and their attorneys, prompted by <u>threatened</u> or actual, civil or criminal proceedings, to the extent that they concern common issues and are intended to facilitate representation in possible subsequent proceedings, or whenever the communication was made in order to facilitate the rendition of legal services to each of the clients involved in the conference.

<u>Aiken</u> at 624 (emphasis added) (internal quotations and citations

omitted).

The plaintiff in <u>Aiken</u> sought discovery of audio tapes

containing conversations between various defendants that were

recorded after the defendants had been sued by the plaintiff and had

signed a joint defense agreement.  The court conducted an <u>in camera</u>

review of the tapes and found that they were not privileged because

the recorded conversations were merely "examples of schmoozing" and

"were not intended to, and do not in fact, facilitate representation

or the rendition of legal services."  <u>Id.</u> at 624-25 (internal

quotations omitted).  So, while it was certainly possible in <u>Aiken</u>

for the CLI privilege to apply, since the parties asserting the

privilege were actual defendants in a lawsuit at the time the

communications were made, the court ruled on the merits that the

communications were not privileged because they did not meet the

basic prerequisites for communications protected by the attorney-

client privilege.  Once again, there is no support in <u>Aiken</u> for

13

Santa Fe's position, since the communications in <u>Aiken</u> were made between actual co-defendants in ongoing litigation.

The district court in <u>In re LTV Securities Litigation</u>, 89 F.R.D. 595 (N.D. Tex. 1981), opined that:

> [D]isclosure of privileged information by an attorney to actual or potential co-defendants, or to their counsel, in the course of a joint defense does not constitute a waiver of the attorney-client privilege.
> . . . The privilege is available to co-respondents in a grand jury investigation as well as to parties made co-defendants by formal indictment. The privilege also protects from disclosure communications between various co-defendants and their attorneys in a civil proceeding.

<u>Id.</u> at 604 (citations omitted).

In <u>LTV</u>, a private securities fraud case, the plaintiff class of shareholders sought to discover remarks made by the corporation's counsel in the presence of representatives of the corporation's financial auditor. At the time the communications were made, both the corporation and its auditor had been served with subpoenas to appear before the SEC as part of an investigation into the corporation's activities by the agency. In finding the communications protected by the CLI privilege, the court noted that the "[corporation] has established that the joint conferences undertaken with representatives of [its auditor] were confidential, concerned common issues, and were intended to facilitate representation in proceedings involving the SEC . . . . Both . . . were subpoenaed by the SEC before the joint discussions which the class seeks to discover." <u>Id.</u> The court found that the parties "had a natural and common interest in consulting about the SEC

14

investigation . . . ." Id. Because the defendants in LTV had been subpoenaed and targeted in SEC investigatory proceedings at the time the communications were made, this case also fails to support Santa Fe's claim of privilege.

In the present case, Santa Fe admits in the motion for reconsideration it filed in the district court that the communications it claims are protected by the privilege were not made in anticipation of future litigation. Instead, the documents were "circulated for the purpose of ensuring compliance with the antitrust laws and minimizing any potential risk associated with the exchange of wage and benefit information." Motion for Reconsideration at 3. In sharing the communications, therefore, they sought to avoid conduct that might lead to litigation. They were not preparing for future litigation. Furthermore, Santa Fe denied, in its responses to the plaintiffs' requests for admissions, that it anticipated or perceived a threat of antitrust litigation against it in May of 1991, when Santa Fe's senior counsel prepared the memorandum that was distributed to the company's competitors. Considering that the original complaint in this case was not filed until August 14, 2000, we cannot say that the district court clearly erred in its implicit finding of fact that Santa Fe's disclosures to third persons of the 1991 memorandum were not made for the purpose of preparing a joint defense to lawsuits based on pre-1991 antitrust law violations.

**B.**

15

We also find unpersuasive Santa Fe's claim that the district court's ruling will cause it irreparable harm. The petition for mandamus states that the "trial court has made it quite clear that any relief on . . . [the privilege issue] is not available in its court." However, in advancing this argument, Santa Fe plainly misconstrues the March 9 ruling. With respect to Santa Fe's express claim of privilege, the district court concluded that: (1) Santa Fe's communications of its in-house counsel's 1991 internal memorandum to other independently owned offshore drilling corporations were not entitled to protection by the attorney-client privilege per se, because the communications were not made by Santa Fe as a client for the purpose of obtaining legal advice or by an attorney to a client in the rendition of professional services; and (2) Santa Fe failed to demonstrate that its disclosure to third persons of the memorandum Santa Fe received from its in-house counsel fell within the common legal interest doctrine or privilege.

Except for the 1991 memorandum, Santa Fe did not specifically identify any other communication as being privileged. The extraordinary writ of mandamus will not issue to grant Santa Fe's blanket request for protection of documents and communications not expressly claimed and shown to be privileged. See Nguyen v. Excel Corp., 197 F.3d 200, 206 n.16 (5th Cir. 1999) ("Blanket claims of privilege are disfavored."); United States v. El Paso Co., 682 F.2d 530, 539 (5th Cir. 1982) ("The privilege must be specifically asserted with respect to particular documents."). However, if Santa

Fe hereafter invokes the attorney-client privilege with respect to a particular document or communication, other than the 1991 memorandum, and the district court determines that the privilege has not been waived by reason of delay, bad faith or other conduct, then neither the March 9 ruling nor this order would prevent Santa Fe from properly claiming and demonstrating its entitlement to that privilege.

## C.

While we are convinced that a reasonable jurist could not find that the district court made clearly erroneous findings or committed an abuse of discretion, we are even more certain that the imperfections, if any, in the trial court's rulings do not warrant the issuance of mandamus. "It is well-established that the mandamus remedy is a drastic one, to be invoked only in extraordinary situations." In re First S. Sav. Assoc., 820 F.2d 700, 705 (5th Cir. 1987) (internal quotations and citations omitted). The petitioner must have a "clear and indisputable" right to the writ.[8]

---

[8]Mallard v. United States District Court, 490 U.S. 296, 309 (1989); Will v. Calvert Fire Ins. Co., 437 U.S. 655, 666 (1978). In Kerr v. United States District Court, 426 U.S. 394, 402-03 (1976), the Supreme Court explained:

> Our treatment of mandamus within the federal court system as an extraordinary remedy is not without good reason. . . . [I]n an era of excessively crowded lower court dockets, it is in the interest of the fair and prompt administration of justice to discourage piecemeal litigation. It has been Congress' determination since the Judiciary Act of 1789 that as a general rule "appellate review should be postponed . . . until after final judgment has been rendered by the trial court. . . ." A judicial readiness to issue the writ of mandamus in

"Thus, for [the petitioner] to establish entitlement to mandamus relief, it must show not only that the district court erred, but that it clearly and indisputably erred." In re: Occidental Petroleum Corp., 217 F.3d 293, 295 (5th Cir. 2000)(emphasis omitted). Because the "common legal interest" privilege is such an amorphous concept, and because this case plainly does not fall within its core, we simply cannot say with such certitude that the trial judge was wrong in this case. In its response, the district court explained its discovery hearing ruling, in pertinent part, as follows:

> Here, the lack of any temporal connection to actual or threatened litigation is striking. Had these Defendants been jointly defending a suit, as opposed to merely discussing concerns, the long elapse of time would not bear so heavily on the Court's inquiry. But, when the threat of litigation is merely a thought rather than a palpable reality, the joint discussion is more properly characterized as a common business undertaking, which is unprivileged, and certainly not a common legal interest. There is no justification within the reasonable bounds of the attorney-client privilege for horizontal competitors to exchange legal information, which allegedly contains confidences, in the absence of an actual, or imminent, or at least directly foreseeable, lawsuit.

As the district court's reasons suggest, the record in this case is neither clear nor indisputable with respect to Santa Fe's motive for sending its in-house counsel's memorandum to its horizontal offshore drilling competitors. It is possible that the

---

anything less than an extraordinary situation would run the real risk of defeating the very policies sought to be furthered by that judgment of Congress.
(Citations omitted).

18

disclosures were made to facilitate future price fixing in violation of the antitrust laws, as the plaintiffs contend.[9] Alternatively, the disclosures were perhaps made in the sole interest of preventing future antitrust violations, as the defendants argue in their motion for reconsideration, in which case they hardly could be seen as the commencement of an allied litigation effort. Furthermore, it is difficult to find that the disclosures were made for the purpose of forming a common defense against alleged prior violations of the antitrust laws, in view of Santa Fe's stout denials that in 1991 it anticipated or perceived a threat of future antitrust litigation.

The ambiguity of the record and the cloudiness of the crucial legal concept involved strongly militate in favor of the conclusion that, if the district court erred at all, it certainly was not clearly and indisputably wrong in finding that Santa Fe's disclosures of its in-house counsel's memorandum to its horizontal competitors were not communications protected under any attorney-client privilege to which Santa Fe was entitled.

## III.

Although Santa Fe's petition for mandamus should clearly be denied, and the foregoing reasons would normally suffice to explain our ruling, we think it is appropriate in this case to also address and put to rest Santa Fe's claims that it was denied due process or

---

[9]If so, they would fall outside the scope of any attorney-client privilege as communications made for criminal or fraudulent purposes. In re Burlington Northern, Inc., 822 F.2d 518, 524 (5th Cir. 1987).

treated unfairly by the district court.

Santa Fe first contends that it "had no opportunity to be heard on the common interest privilege issue" because its enrolled counsel was not present at the March 9 discovery hearing. Mr. Citti was the only attorney who actually spoke for the defendants during the hearing,[10] and the record does not explicitly reflect that he was authorized to speak for all of the defendants. However, a reading of the materials presented in connection with the petition for mandamus reveals that Mr. Citti did represent all of the defendants, and Santa Fe does not expressly contend otherwise. In fact, Santa Fe acknowledges that Mr. Citti acted on the defendants' behalf in "discussing . . . the scheduling of the depositions of the plaintiffs' experts and the production of the class representatives for deposition."[11] Mr. Citti likewise represented all defendants in objecting to the plaintiffs' answer to an interrogatory. He even responded to the plaintiffs' request to take the depositions of CEOs of defendant companies whose enrolled counsel were not present at the hearing. Furthermore, when Mr. Buzbee objected to the failure of the defendants to either produce the requested documents or establish a legal basis for withholding them, he stated that Mr. Citti was there "as a spokesperson" for all of the defendants. Far

---

[10]Mr. Roberts, the attorney for Nabors Drilling, and Mr. Watkins, the attorney for Marine Drilling, stood silent and thereby indicated their consent to Mr. Citti's advocacy on their clients' behalf.

[11]Petition for Writ of Mandamus at 11.

20

from rejecting this role, Mr. Citti responded by presenting a categorical argument in favor of the defendants' privilege claims; he did not limit the scope of his advocacy to fewer than all of the employer-defendants.

In any event, regardless of whether Mr. Citti was implicitly or expressly authorized to protect all of the defendants' interests at the discovery hearing, Santa Fe was not denied an adequate individual opportunity to present its privilege claim, supporting evidence, and full written argument. Santa Fe fully briefed the district court on the issues and submitted an affidavit as to what its witness would have testified to at an evidentiary hearing.[12] The court considered Santa Fe's brief and affidavit evidence before denying the motion for reconsideration. The district court elaborated on the reasons for its ruling in the response it filed at the direction of this court. Santa Fe does not point to any actual prejudice it sustained because of the nature of the process it was afforded. Santa Fe's due process argument therefore lacks merit.

Santa Fe also contends that the March 9 hearing was unfair because the plaintiffs did not give formal written notice of the oral discovery objections they raised. However, this contention ignores the defendants' availment of the trial court's expedited process for resolving discovery disputes, a process agreed to by

---

[12]See supra at 7 (quoting the Declaration of Robert S. Preece, Senior Counsel for Santa Fe).

21

Santa Fe and all other parties to this litigation.[13]  Mr. Citti presented the defendants' objections orally without filing particularized written notice or motions.  Thus, under Santa Fe's view, only the defendants were entitled to the benefits of the court's streamlined procedure.  Neither the record nor simple logic supports this view.

Moreover, the fax which Mr. Citti sent to notify the plaintiffs of the March 9 hearing stated that it had been set to resolve the "outstanding discovery issues"; it did not limit or particularize the discovery issues that could be taken up at the hearing.  It is undisputed that Mr. Buzbee, plaintiffs' counsel, called Mr. Citti prior to the hearing and told him that he would be raising the issue of whether the requested documents withheld by the defendants were privileged.  In view of the evidence presented to this court, we conclude that all of the defendants knew or should have known that the CLI privilege issue would be addressed during the hearing. Indeed, the presence of counsel for co-defendants Nabors Drilling and Marine Drilling strongly indicates that all parties were notified of the discovery hearing, and Santa Fe does not claim that it was deprived of actual notice and an opportunity to participate in the hearing.

Finally, the record does not reflect any impropriety on the district court's part in conducting the March 9 discovery hearing.

---

[13]See supra note 4.

In considering the issues brought up by both defense and plaintiff counsel, the court simply followed the guidelines which it had established, and to which all of the parties had agreed, for the expedited resolution of discovery disputes without the necessity of filing written motions. Evidently, the participants understood that this was the nature of the proceeding because no one objected to the oral presentation of the discovery issues or to the court's summary disposition of the disputes without taking further evidence. Thus, there is no merit to Santa Fe's suggestion that it was treated unfairly by the district court.

**IV.**

For the foregoing reasons, the petition for a writ of mandamus is DENIED.

JERRY E. SMITH, Circuit Judge, dissenting:

### I.

This is a case of compelled document production without adequate warning. In refusing to issue a writ of mandamus, the panel majority overlooks important details from the course of proceedings, misapplies applicable law and the local rules, and fails to take account of the reassignment of this case to a different district judge.

Perhaps even more importantly, the plaintiffs—who are the movants seeking to acquire the documents at issue—have now moved to dismiss the district court proceeding, because the parties have reached a full settlement of this litigation. There is, effectively, no longer a case or controversy in this matter, and the mandamus proceeding is, at least practically speaking, moot and should be dismissed as such or held without a ruling. Because of the lack of a case or controversy, the majority's opinion is without precedential force in this circuit or elsewhere—an exercise in oratory without legal significance.

By insisting on acting on the mandamus petition immediately before final judicial approval of the settlement, the panel majority—albeit presumably with the best of intentions—issues a ruling that is beyond its judicial power. The majority offers no explanation of why it persists in acting at this time and under these circumstances. Accordingly, I respectfully dissent.

### II.

The essence of what occurred to spark the mandamus petition appears succinctly in that petition:

On March 9, 2001 the trial court held a hearing requested by one defendant for the purpose of scheduling expert witness depositions and class representative depositions . . . . Counsel for three of the twenty-two defendants were present . . . .

At the end of that hearing, Plaintiffs' counsel, without a motion to compel on file and/or a hearing scheduled on production of documents, demanded production of a category of documents claimed privileged by defendants . . . . After [a] description by Global Marine's counsel of one example of a document at issue, the trial court ordered *all* defendants to produce *all* documents prepared by legal counsel that were "transmitted to another company" . . . .

Even though the defendants had no notice that the trial court would rule on this issue on March 9, even though the trial court did not allow the submission of evidence and authorities in support of the privilege, even though the trial court did not review a single document *in camera*, in this lawsuit with 22 defendants, it ordered the production of all privileged documents authored by legal counsel and transmitted to another company. The court ruled that all defendants had waived their attorney-client privilege.

(Paragraph breaks added.)

### III.

I will elaborate on the majority's account of what occurred in this proceeding. At the March 9, 2001, hearing, before The Honorable Samuel Kent ("the district court"), who issued the ruling at issue in this mandamus proceeding, the only counsel present were as follows, as set forth in the official transcript:

For the Plaintiffs: Melancon & Hogue[,] By: Mr. Richard Melancon[,] By Mr. Anthony Buzbee [address]

For the Defendant Global Marine: Citti & Associates[,] by Mr. Ross Citti [address]

For the Defendant Nabors Drilling, USA: Fulbright & Jaworski[,] By: Mr. Steve Roberts [address]

For the Defendant Marine Drilling: Royston, Rayzor, Vickery & Williams[,] By: Mr. James Watkins [address]

As is plainly evident, no counsel was present for petitioner Santa Fe International Corporation ("Santa Fe"). Nor was there ever an indication that any of the attorneys present was authorized to, or did, speak or try to speak on behalf of Santa Fe or any of the other eighteen absent defendants.

At the beginning of the hearing, Mr. Citti announced the following: "Ross Citti for Global Marine, Your Honor." This contrasts vividly with the announcement made at the January 3, 2001, hearing in this case, at which attorneys Finis Cowan and David Beck announced, at the beginning, that they had "been designated as the spokespersons for this hearing"; the court reporter listed them as appearing "for defendants."

At the March 9 hearing, there was no announcement that Mr. Citti was at the March 9 hearing to represent or speak for any defendant other than his client, Global Marine. In its petition, Santa Fe explains why, in fact, Mr. Citti could not adequately have done so: "Counsel for only three out of twenty-two co-defendants were present at the hearing . . . . The counsel [i.e., Mr. Citti] who requested the hearing for purposes of scheduling depositions was not——and could not have been——prepared to discuss each of the defendants' arguments relating to each of the documents alleged to be covered by the common interest [CLI] privilege, especially in light of the fact that each defendant was at a different stage of preparing its privilege logs."

It is not surprising that Santa Fe was not represented. The only formal notice of the hearing was a one-sentence letter from Mr. Citti to Melancon, Hogue & Buzbee, L.L.P., dated March 8, 2001——the day before the hearing——advising of "a hearing to resolve outstanding discovery issues." The letter does not indicate that copies were sent to anyone, although other counsels' presence at the hearing suggests that at least some other attorneys were notified.

Even if Santa Fe's counsel, Lawrence Gaydos of the firm of Haynes & Boone, was told of the hearing, the document production should not have been ordered there. As Santa Fe explains,

> Plaintiffs' argument that Santa Fe could not have been surprised by their pursuit of production of the documents in this case is no answer to Santa Fe's due process right to have notice that the issue would be raised at a hearing scheduled for an entirely different purpose and the right to be present and to present argument at the hearing.

IV.

It is unfortunate enough that the district court ordered document production without notice or a hearing or other due process protections. Even more astonishing——and without explanation or support in the record or in any caselaw from this circuit or elsewhere——is that

25

the court actually gave movants more than they were asking for in regard to production of these documents.

Movants' counsel came to the hearing asking only for *in camera* review. What they got, instead, was immediate production of the very documentsSSindeed, all the documentsSSthey had requested.[14] The majority's declaration that the attorneys were seeking immediate productionSSas distinguished from *in camera* reviewSSis undermined by what the attorneys said, as reflected in the record.

At the hearing, Mr. Buzbee recounted his conversation of the previous day with Mr. Citti, agreeing to the hearing. As Mr. Buzbee explained, plaintiffs were asking only that defendants bring the documents so the court could examine them. As Mr. Buzbee put it, "let the Judge look at them." Importantly, Mr. Buzbee described the documents as papers that "hurt them [the defendants] badly."

The court apparently never even considered looking at the documents. Instead, it summarily ordered them produced. That is, as I have said, more than the attorneys were even asking for at that time.

---

[14] I am at a loss to understand the majority's assertion that the district court ordered the production of only one document. At the hearing, the attorneys and the court repeatedly referred to multiple documents. As I will note, the court ordered that "I want all of those documents produced" and added, "I want those documents." Even more specifically, Santa Fe, in its mandamus petition, asks us to direct the court to vacate its "ruling . . . to produce documents claimed to be protected."

Moreover, Mr. Citti, at the hearing, described only one document, using it as an example of a set of documents as to which the common legal interest ("CLI") privilege was being claimed. Without even attempting to consider the various documents separately, to see whether perhaps some but not all were privileged, the court just ordered that "I want all of those documents produced." The court added: "I want those documents."

Even assumingSScontrary to factSSthat Mr. Citti was authorized to speak for Santa Fe, the court seriously erred not only in failing to look at the documents but also in refusing to allow some sort of hearing, especially in light of the lack of warning of the nature of the proceeding. After the court declared that "I want those documents," Mr. Citti at least attempted some sort of defense, if only on behalf of his client, Global Marine Drilling Company: "Your Honor, there is some authority for the proposition that the privilege that we're asserting exists and what ISSwould the Court consider a very short briefSS," to which the court answered: "No. I'm ordering you to do what you want. Seek mandamus if you don't like that but do it within the time frame I've suggested or I'll have the special master do it for you."

## V.

If the documents indeed might have turned out to be privileged, ordering their production might have violated the "joint defense" or "CLI" privilege, an expansion of the attorney-client privilege, recognized by this court, that prevents a waiver of attorney-client privilege where an attorney discloses privileged information to actual or potential co-defendants. *In Re LTV Sec. Litig.*, 89 F.R.D. 595, 604 (N.D. Tex. 1981) (Higginbotham, J.). *See Wilson P. Abraham Constr. Corp. v. Armco Steel Corp.*, 559 F.2d 250, 253 (5th Cir. 1977). The pur-

26

pose of the CLI privilege is "to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel." *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989).

Santa Fe correctly argues that the CLI privilege provides protection during the course of a joint legal defense effort and is not waived by communication between attorney and client "to the extent that [the communication] concern[s] common issues and [is] intended to facilitate representation in possible subsequent proceedings." *LTV*, 89 F.R.D. at 604 (citing *Hunydee v. United States*, 355 F.2d 183, 185 (9th Cir. 1965)). In other words, the parties claiming protection under the rule only need share "a common legal interest" about a matter, *see Hodges, Grant & Kaufmann v. United States*, 768 F.2d 719, 721 (5th Cir. 1985),[15] and there need be no actual litigation in progress, *see Schwimmer*, 892 F.2d at 243-44. As long as Santa Fe shows that the documents were given in confidence and that the communication regarded a common legal interest with respect to the subject matter of the communicationSSboth assertions that Santa Fe says it can satisfySSthe district court should not order production.

Responding to Santa Fe's characterization of the documents, the district court stated, "I think once the documents albeit the confidential one from general counsel within the company is transmitted to another company, you voluntarily waive any privilege. Then it becomes the precise genesis of antitrust." This is

plainly not the law in the Fifth Circuit. Nevertheless, the district court, in responding to the mandamus petition, justifies its decision by citing caselaw from other circuits that imposes a restrictive reading of the CLI doctrine.[16]

As I have said, in this circuit, "[t]he privilege is not . . . waived if a privileged communication is shared with a third person who has a common legal interest with respect to the subject matter of the communication." *Hodges*, 768 F.2d at 721 (citing *Wilson P. Abraham Constr. Corp.*, 559 F.2d at 253).[17] There is no

---

[15] *Accord United States v. Fortna*, 796 F.2d 724, 730 (5th Cir. 1986).

[16] *See Walsh v. Northrop Grumman Corp.*, 165 F.R.D. 16, 18 (E.D.N.Y. 1996) (stating that CLI privilege applies only to parties having a common "legal" interest, rather than a mere business interest); *Schwimmer*, 892 F.2d at 243 (opining that the CLI privilege is limited to those communications oriented primarily toward preparing a legal defense); *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 447 (S.D.N.Y. 1995) (contending that the CLI privilege does not encompass a joint business strategy that happens to include as one of its elements a concern about litigation); *Griffith v. Davis*, 161 F.R.D. 687, 692 (C.D. Cal. 1995) (asserting that a joint defense effort must have been embarked upon irrespective of whether litigation has been commenced); *Mecom Holding Co. v. Baxter Travenol Labs., Inc.*, 689 F. Supp. 841, 844 (N.D. Ill. 1988) (stating that the timing of the communications is importantSSthere must be a strong possibility of litigation).

[17] The movants assert that the district court did not rule that the CLI privilege does not exist. Instead, they argue that the court ruled that the CLI privilege does not apply to three specific documents in Santa Fe's

accurate way to decide whether the "common legal interest" test is satisfied without examining the documents individually.

## VI.

Even if the cases the district court now relies on were binding caselaw in this circuit, the decision should not stand, because the court lacks evidence on which to base its conclusions. As Santa Fe describes it, the district court, instead of looking at the documents and determining their nature, "summarily ruled that privilege is always waived when documents are transmitted to a third party, thus eradicating any common interest privilege in the face of this circuit's law to the contrary [and] [t]hen . . . refused to reconsider its ruling." The court overlooked *Hodges*, a case from this circuit that recognizes the expansion of attorney-client privilege to encompass the CLI doctrine and that, based on *LTV* and *Schwimmer,* prevents such documents from being handed over if it is determined that they indeed are privileged.

Neither we nor the district court knows whether the documents are privileged. Neither the district court nor this court has viewed the documents. It may be that some are privileged and some are not. All that is recorded in the transcript of March 9 is Santa Fe's statement that they are privileged and the district court's decree that they are not.

More analysis is needed before any such documents should be ordered produced. Instead, however, the district court ordered all the documents, from all the defendants, to be turned over at once.

## VII.

As Santa Fe alleges, the district court failed to abide by the applicable rules of procedure. The movants never filed a motion for production of the documents in accordance with Southern District of Texas Local Rules 7.1 and 7.3,[18] which require of opposed motions that they be in writing and must include or be accompanied by authority, must be accompanied by a separate proposed order granting the relief requested and setting forth information sufficient to communicate the nature of the relief granted, must contain an averment that the movant has conferred with the respondent and that they cannot agree on the disposition of the motion, and must be filed twenty days before submission. Because plaintiffs filed no motion and made instead only an "impromptu oral request" for production, the ruling that the documents are not privileged is error.

The purpose of the March 9 hearing was to discuss two issues: the scheduling of the depositions of the plaintiffs' experts and the production of the class representatives for deposition. Moreover, Santa Fe's assertion that the movants "ambushed" them with their request for the documents provides additional ground for enforcement of the local rules, which are designed to ensure that notice is given to the party from whom production is sought.

In their response to the petition, the movants contend that there was no way Santa Fe could have been surprised by their request, because "[t]he dispute amongst the parties con-

---

possession, specific documents that, contrary to what movants say, are neither discussed nor alluded to by the parties or the district court anywhere in the record, save in movants' response to the petition.

---

[18] These local rules impose requirements in addition to those of FED. R. CIV. P. 7(b).

cerning privilege issues had been extant for more than a month prior to the [district] [c]ourt's hearing [of March 9]." This assertion is not dispositive, however.

Even if we assume, *arguendo*, that Santa Fe persuasively could have defended the documents' CLI privileged status on March 9, and thus had complete notice of movants' intention to request production at the March 9 hearing, the district court still denied Santa Fe the opportunity to defend itself on that same day by summarily ruling that the documents are not protected. Therefore, the notice issue that the movants raise is irrelevant, and the important fact is that Santa Fe never was given the opportunity to establish the alleged privilege.

VIII.

Forcing any party to turn over privileged documents is a serious matter. An order directing the production of such documents easily justifies the extraordinary remedy of mandamus. *In re Burlington N., Inc.*, 822 F.2d 518, 522 (5th Cir. 1987). Here, we cannot know whether the documents ultimately should be produced, because the district court has not accorded Santa Fe its right to an orderly process to determine the nature of the documents or the history of their dissemination.

The error that justifies mandamus relief is this procedural failure to allow, after sufficient notice, an adequate hearing and *in camera* review, so the parties from whom these allegedly damaging documents are being demanded can have their fair day in court. The majority should require adherence to these basic requirements.

IX.

An additional justification for mandamus relief materialized well after Santa Fe filed its mandamus petition. On July 30, 2001, the Chief Judge of the United States District Court for the Southern District of Texas entered an order that, with the consent of the district court, reassigned this case, and eighty-four others in which Mr. Melancon was representing plaintiffs before the district judge against whom this mandamus proceeding is brought, to the docket of another judge of the Southern District of Texas.[19]

Mandamus proceedings are brought against a specified district judge, in response to an action or ruling by that judge, and not against a district court in the abstract. Here, as I have explained but the majority does not discuss, the mandamus petition is brought against a judge who no longer presides over this case. If it were not for the imminent settlement of this litigation, this matter most properly would need to be returned for review by the newly-assigned district judge, so he would have the opportunity to examine the documents at issue and exercise his own discretion in regard to them. He should not be saddled with the decisions of his predecessor, when it would be so simple and expeditious to send this issue to him now.

Accordingly, because the panel majority, for the reasons I have stated, should not be acting at this time to deny the petition for writ of mandamus, I respectfully dissent from the decision of the majority to insist on issuing its order now, and from the substance of that order even assuming it were properly issued.

---

[19] Special Order No. G-01-01 (S.D. Tex. July 30, 2001).