**POWER MOSFET TECHNOLOGIES,**
Plaintiff,

v.

**SIEMENS AG, et al., Defendants.**

No. 2:99CV168.

United States District Court,
E.D. Texas,
Beaumont Division.

Oct. 30, 2000.

Jay P. Kesan, Asst. Professor of Law, Champaign, IL, pro se.

Allen M. Sokal, IV, Smith R. Brittingham, IV, Donald R. Dunner, Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, DC, Carl R. Roth, Law Office of Carl R. Roth, Marshall, TX, Michael Wayne Shore, Alfonso Garcia Chan, Joel M. Fineberg, PC, Dallas, TX, for plaintiff.

Gilbert Irvine Low, Orgain, Bell & Tucker, Beaumont, TX, Robert Martin Chiaviello, Jr., Baker Botts LLP, Jane Politz Brandt, Bruce S. Sostek, Thompson & Knight, James Patrick Bradley, Li Chen, Sidley & Austin, Dallas, TX, Hubert Oxford, III, Robert William Craft, Jr., Michael Keith Eaves, Bencken-

stein & Oxford, Beaumont, TX, Nicholas H. Patton, Patton, Tidwell, Sandefur, Damon Young, Lance Lee, Young, Pickett & Lee, Texarkana, TX, Neil P. Sirota, Baker Botts LLP, New York City, David E. Killough, O'Melveny & Myers, San Francisco, CA, for defendants.

## MEMORANDUM OPINION AND ORDER

RADFIELD, United States Magistrate Judge.

Plaintiff, Power Mosfet Technologies "PMT", filed this suit alleging patent infringement against the Defendants, including ST Microelectronics, Inc. ("STM"), with respect to U.S. Patent No. 5,216,275 ("the '275 patent") that PMT received by assignment from the University of Electronic Science Technology of China.[1]

In July 2000, Plaintiffs filed a *Motion to Compel* [108] attacking claims of a joint defense agreement alleged to exist by the Defendants. Plaintiff also filed a *Motion to Compel and for Sanctions* [132] regarding answers to certain interrogatories, including one in which Defendants had asserted privilege due to the joint defense agreement. A *Markman* hearing was held August 28–29, 2000 before Special Master Jay Kesan, whose report is pending.

These motions have been referred to the undersigned United States Magistrate Judge for resolution per 28 U.S.C. § 636(b) and the Local Rules for the Assignment of Duties to United States Magistrates by order of Judge Thad Heartfield [172]. For the reasons given, the Court finds that a joint defense agreement does exist, but that it does not provide as broad a protection that Defendants would like. Thus, Plaintiff's *Motion to Compel* [108] and *Plaintiff's Motion to Compel and for Sanctions* [132] are **GRANTED–IN–PART** and **DENIED–IN–PART**.

**Interrogatory # 5**

Plaintiff requested the date that an employee of a sister company conceived the alleged infringing product(s) referred to as "MdMesh." Defendant stated that it had no control over that the employee, and thus could not be required obtain the information sought.

Although consolidation of this suit with a recent suit against the sister company is likely and would render the issue moot, the Court conditionally **GRANTS–IN–PART** this request at this time.[2]

**Interrogatory # 14**

Plaintiff propounded the following interrogatory:

*Identify* and produce every document where *you* or *your* attorneys in the past acting on *your* behalf have provided a court, a Patent & Trademark Office or any other *person* with a definition for any of the following terms as used in a patent. (19 terms omitted. Words in italics were given broad definitions by the Plaintiff as part of the request).

Defendant ST objected to the production of documents in response to an interrogatory, claimed work product, argued the existed of protective orders in other litigation, objected to the burden and relevance, and referenced the availability of information in the prosecution history files of the USPTO.

Without question, the information would be relevant, particularly if Defendant argued definitions of the terms that would injure its Markman construction position. Nor is it sufficient to point to the PTO, since ST may have argued those adverse positions in applications which are confidential by virtue of having failed or being abandoned, and thus that information would be unavailable except from the files of ST and its prosecution counsel. Protective orders are of no avail as it would suffice to enter appropriate orders to extend that protection. Work product does not apply to prosecution materi-

---

1. Defendants have challenged the assignment, but at the time of this writing all formalities of assignment appear to have been observed. See PMT's *Motion for Partial Summary Judgment* [179].

2. For the Court's view on what is within the control of the Defendant, consult the Order on other motions heard at the same hearing [184].

als. Many a patent attorney has been deposed and forced to turn over their files, which are never prepared in the immediate anticipation of litigation, let alone as a response to litigation. And, issuing a request for production would be sufficient to defeat the defect in form.

■ That leaves burden. Fortunately for Defendant, the request is overbroad and burdensome. Many of the requested terms are so common in semiconductor technology as to implicate every patent application ever filed by Defendant in the U.S. and abroad, and ST claims to own over 1,000 patents, nor has there been a showing of compelling need that would justify imposing such a burden on the Defendant.

Plaintiff needs to reframe its interrogatory as a request for production and focus in on the infringing device, perhaps on the 58 patents that Defendant claims relate to the MDMesh product.

Defendant's objection is **SUSTAINED.**

## Interrogatory #9 & The Joint Defense Agreement

These two issues are essentially the same request in two separate papers. The Court's inquiry must address these questions:

1) Do the parties have a common interest?

2) What is the extent of the common interest?

3) Have the parties proven that they operated within the common interest?

4) What privilege is being asserted under the common interest?

5) Is the requested material within the asserted privilege? [3]

The incorrect answer to any of the above questions will mean that the Defendants must produce the documents which fail to pass muster.

## The Common Interest Privilege and Its Scope

■ The common interest privilege is rooted in criminal proceedings against multiple defendants. Typically, the defendants face charges arising from the same criminal conduct or transaction, even if the cases are tried separately. *Chahoon v. Commonwealth,* 62 Va. 822, 21 Grat. 822, (1871)(upholding privilege even though co-defendants tried in separate actions.) Should there be no common interest or defense, no privilege applies. *Smale v. United States,* 3 F.2d 101, 102 (7th Cir.1924) (rejecting privilege when co-defendants engaged in separate defenses). The privilege has been recognized in civil cases in which parties have an identical, not similar, legal interest, and not merely a commercial interest.[4] *See In re Regents of University of California,* 101 F.3d 1386 (Fed.Cir.1996)(adopting the 7th Circuit standard as stated in *Duplan Corp. v. Deering Milliken, Inc.,* 397 F.Supp. 1146, 1172, (D.S.C.1974)). Even where a common interest exists, that alone does not create a privilege; it merely extends a recognized privilege, commonly the attorney-client or work product privileges, to cover those communications to parties with the common interest.

As this is a patent case, the Court looks to the Federal Circuit for guidance on applying the privilege in a patent context. Rarely has the Federal Circuit examined the privilege, but combined with the district courts, these cases identify how carefully the legal interests of the parties claiming the privilege must be examined.

In *Regents,* the Circuit upheld the privilege when claimed by a patentee and a licensee because both have a legal interest in the enforcement of the patent, the patentee for obvious reasons and the licensee because it preserves his legal position with respect to infringers.

On a few occasions, district courts have had the opportunity to examine the issue. In *Go Medical Industries Pty, Ltd v.C.R. Bard Inc.,*[5] the district court disallowed the privi-

---

**3.** Note that the work product privilege is one of degrees. Fact work product may still have to be produced on a showing of substantial need.

**4.** Identical. Pay close attention to that word. It will be important later.

**5.** 1993 WL 561125, 1998 U.S. Dist LEXIS 22919 (D.Conn.1998).

lege between a patent litigation insurer, Connecticut Indemnity Company, and a patent holder seeking enforcement of the patent. The court held that while the patentee had an interest in enforcement of the patent, the insurer's interest was limited to payment or non-payment for the litigation expenses, regardless of the patentee's success. Thus, communications made to the insurer's litigation consultant were not protected by a common interest.[6]

Perhaps the most interesting case, which may apply later in this case given the recent filing against other companies, is *Transmirra Products Corp. v. Monsanto Chemical Co.*, 26 F.R.D. 572 (S.D.N.Y.1960). Transmirra had filed independent suits against Monsanto and Sylvania on the same patent, and sought communications between those defendants. The court observed that Transmirra had alleged a "conspiracy to infringe" by the defendants, and thus upheld the privilege with respect to communications between the two, but allowed Transmirra to seek communications made to attorneys other than counsel for Monsanto and Sylvania.

**Formality of Agreement**

While there is no doubt that a fully executed, well drafted joint defense agreement makes it simple to determine if parties have intended to participate in a joint defense, it is not a necessary document.[7] Plaintiff has alleged that absent an executed agreement, there can be no common interest privilege. This is patently untrue. However, parties relying on an oral agreement run the risk that the Court can not determine when or if an agreement was reached.[8] *See Ronald A. Katz, Technology Licensing, L.P. and MCI Telecommunications Corp. v. AT & T Corp.*, 191 F.R.D. 433 (E.D.Pa.2000)(affirming finding of special master that any agreement

undeterminable until the written agreement was executed).

Courts that have wrestled with the issue recognize that there will be a period of negotiation prior to parties agreeing to a joint defense, and that in some cases the parties will be unable to come to an agreement. In those situations, the communications made for the purpose of undertaking a joint defense are no less privileged than those after a joint defense has been agreed.[9] *See Sig Swiss Industrial Co. v. Fres-co System USA, Inc*, 1993 WL 82286, 1993 U.S. Dist LEXIS 3576 (E.D.Pa.1993)(finding a joint defense arising from an indemnification agreement); *Eisenberg v. Gagnon*, 766 F.2d 770 (3rd Cir.1985)(finding that communications in an effort to establish a joint defense is protected); *Hewlett–Packard Co. v. Bausch & Lomb Inc.*, 115 F.R.D. 308, 310 (N.D.Cal.1987).

■ In the case at bar, Defendants are charged with independent infringement of the '275 patent. Undoubtably, Defendants have a common interest in declaring the '275 patent invalid or unenforceable. Such a ruling would result in a take nothing judgment for Plaintiff, and there would be no further inquiry regarding infringement. In that respect, Defendants have a common legal interest, and might be expected to exchange opinions regarding the prosecution history of the '275 patent, potential prior art, the assignment of the '275 patent, and similar issues.

■ However, the common interest does not extend to the infringement analysis against each individual Defendant absent a conspiracy to commit infringement. Unlike *Transmirra*, the Defendants are competitors, and are engaged in developing technologies superior to each other for obvious commercial advantage, and the Court has heard no

---

6. The court was guided by cases involving the relationship between the insured and the insurer. *See In re Pfizer Inc. Securities Litigation*, 1990 WL 250287, 1993 U.S. Dist. LEXIS 18215, (S.D.N.Y.1993); *In re Imperial Corp. of America*, 167 F.R.D. 447 (S.D.Ca.1995).

7. Perhaps, one approach, which might be called overkill, bulletproof, or sheer brute force depending on the point of view, was illustrated in x. There, the parties not only executed a JDA, but

also required codicils at every meeting of counsel, further affirming that no party had settled or become adversary, etc.

8. It should not be too surprising that communications after negotiations failed would not be privileged.

9. Such an agreement would still be subject to the test of whether privilege applied.

evidence of a coordinated effort to produce shared technology. In fact, Defendant's each submitted separate briefs for the *Markman* hearing, which would be expected since a claim construction that might favor Defendant A for non-infringement, might also lead to a finding against one or more of the other Defendants.[10] In that respect, the legal interests of the Defendants diverge. Therefore, the Court finds that the Defendants had no common legal interest in the construction of the '275 patent, thus there can be no common interest privilege regarding those matters.

### The Joint Defense Agreement

At the motion hearing, the Court ordered the Defendants to produce the joint defense agreement for in camera inspection.[11] What the Court received was shocking; it is no wonder that they failed to provide it to Plaintiffs.[12] Defendants offered printouts from two different computer files, signed by most of the attorneys, but not all, and contained dates of June 14–16, 2000 for the various signatures. When a fully executed document was requested by telephone, counsel explained that the document had been lost between the conference room and the copy room on the day it was executed, and provided affidavits from various persons present during the signing.

Fortunately for Defendants, a written agreement is not a requirement to claim the common interest privilege.

### Conclusion

The Court finds that Defendants did intend to conduct a joint defense, and that the defense became effective at least as early as June 16, 2000.[13] However, keeping in mind that privileges are to be narrowly drawn,[14] it must be said that where the common interest ends, so does the privilege.

Therefore it is **ORDERED** that Defendant produce the text of the agreement to the Plaintiff. Plaintiff may request specific documents it believes to be outside the privilege by Bates number.[15] Given that the case will be transferred to another District Judge shortly, that request should be delayed until the case has been transferred. Sanctions are denied at this time, but may be imposed in the future on a finding that the Defendants have not made a good faith effort to classify their documents in accordance with this opinion, and produce those which are not protected.

Plaintiff's *Motion to Compel* [108] and *Plaintiff's Motion to Compel and for Sanctions* [132] are **GRANTED–IN–PART** and **DENIED–IN–PART**.

---

10. There is an argument that this is the *ideal* resolution for Defendant A because its product will proceed to market unfettered, whereas similar products of competitors will be enjoined or forced to bear a royalty to the rightholder, thus giving Defendant A at least some commercial advantage over the co-defendants (and other licensees as well.)

11. Defendant ST boldly and inaccurately asserted in it response that it could produce that very document to the Court.

12. This would have been the proper thing to do. The party claiming the privilege has the burden of proof that it exists, the agreement proves to the adverse party exactly who the participants are. The claim that the agreement itself is work product is without merit. The agreement does nothing to reveal counsel's mental impressions or thought processes, and the substantial need is

fulfilled by the requirement of proving the privilege. Judicial economy is thus best served by producing the document. When the propriety of the privilege is disputed, then courts must resort to *in camera* inspection to determine what documents if any are protected.

13. Communications arising out of the negotiation of the joint defense agreement would also be covered to the extent that there was a common legal interest.

14. Consult the R & R of the Special Master in *Charles Thurmond, et al v. Compaq Computer Corporation*, 1:99CV711, for this Court's view of privilege, coming soon to a reporter near you.

15. These should already be part of the privilege log. If not, the Defendant must supplement the log within 20 days.