An appropriate order will issue.

Francis FERKO and Russell Vaughn, as Shareholders of Speedway Motorsports, Inc., Plaintiffs,

v.

NATIONAL ASSOCIATION FOR STOCK CAR AUTO RACING, INC., International Speedway Corporation, and Speedway Motorsports, Inc., Defendants.

No. 4:02–CV–50.

United States District Court, E.D. Texas, Sherman Division.

Nov. 20, 2003.

Michael D. Hausfeld, Robert Joseph Barton, Brent W. Landau, and Daniel A. Small of Cohen, Milstein, Hausfeld & Toll, Washington, D.C., Grace Ann Weatherly of Wood, Thacker & Weatherly, Denton, TX, Samuel A. Cherry, Jr., Angela J. Mason, of Cochran, Cherry, Givens & Smith, Dothan, AL, Ray-

mond J. Farrow, Mark A. Griffin, Lynn L. Sarko of Keller, Rohrback, LLP, Seattle, WA, Stephen H. Echsner, Meghan McCormick Tans, James M. Messer, of Levin, Papantonio, Thomas Mitchell, Echsner & Proctor, Pensacola, FL, Alexander M. Clem, Melvin B. Wright, Keith R. Mitnik, of Morgan, Colling & Gilbert, Orlando, FL, for Francis Ferko.

Richard William Wood, of Wood, Thacker & Weatherly, Denton, TX, Stephen H. Echsner, Megan MoCormick Tans, James M. Messer, of Levin, Papantonio, Thomas Mitchell Echsner & Proctor, Pensacola, FL, Alexander M. Clem, Melvin B. Wright, Keith R. Mitnik, of Morgan, Colling & Gilbert, Orlando, FL, for Russell Vaughn.

Clyde Moody Siebman, of Siebman, Reynolds, & Burg, LLP, Sherman, TX, Larry Dean Carlson and Calvin Roderick Pehlan, of Baker, Botts, Dallas, TX, Stuart H. Singer and Gregory S. Slemp of Boies, Schiller & Flexner, Fort Lauderdale, FL, Marianne Fogarty, Alan B. Vickery, Philippe Z. Selendy, Alexa S. Bator of Boies, Schiller & Flexner, New York City, Helen M. Maher, David Feuerstein, of Boies, Schiller, & Flexner, Armonk, NY, for NASCAR.

Rodney Akcer of Jenkens & Gilchrist, Dallas, TX, Barry J. Brett, Gilbert C. Hoover, IV, of Jenkens & Gilchrist, New York City, for International Speedway, Corp.

Jim E. Cowles, of Cowles & Thompson, Dallas, TX, Fred T. Lowrance, Charlotte, NC, Melanie Black Dubis, of Parker, Poe, Adams & Bernstein, Raleigh, NC, for Speedway Motorsports, Inc.

### ORDER DENYING PLAINTIFFS' MOTION TO QUASH SUBPOENA FOR PARKER, POE, ADAMS & BERNSTEIN, LLP TO PRODUCE DOCUMENTS

SCHELL, District Judge.

Before the court are the following written submissions:

a) "Plaintiffs' Motion to Quash Subpoena for Parker, Poe, Adams & Bernstein, LLP ('Parker Poe') to Produce Documents" (Dkt.# 139), filed on August 21, 2003;

b) "Defendant National Association for Stock Car Auto Racing, Inc.'s ('NASCAR') Response to Plaintiffs' Motion to Quash Subpoena for Parker, Poe, Adams & Bernstein LLP to Produce Documents" (Dkt.# 153), filed on September 5, 2003;

c) "Plaintiffs' Reply to NASCAR's Opposition to the Motion to Quash" (Dkt.# 156), filed on September 12, 2003; and

d) "Defendant National Association for Stock Car Auto Racing, Inc.'s Sur–Reply in Further Opposition to Plaintiffs' Motion to Quash Subpoena for Parker, Poe, Adams & Bernstein LLP to Produce Documents" (Dkt.# 172), filed on September 18, 2003.

After careful consideration, the court is of the opinion that the motion should be DENIED.

### I. BACKGROUND

Parker Poe represents Speedway Motorsports, Inc. ("Speedway"), a nominal defendant in this lawsuit. *Id.* at 1. Plaintiffs and Speedway have been sharing information regarding deposition issues. *See* Def. National Association for Stock Car Auto Racing, Inc.'s Sur–Reply in Further Opposition to Pls.' Mot. to Quash Subpoena for Parker, Poe, Adams & Bernstein LLP to Produc. Docs. at 2; *see* Pls.' Reply to NASCAR's Opp'n to the Mot. to Quash at 1. Additionally, counsel for Plaintiffs sent three emails to Fred Lowrance, an attorney at Parker Poe and counsel for Speedway. Pls.' Reply to NASCAR's Opp'n to the Mot. to Quash at 1. After discovering these facts, NASCAR served Parker Poe with a subpoena on July 29, 2003. Pls.' Mot. to Quash Subpoena for Parker, Poe, Adams & Bernstein, LLP to Produc. Docs., Ex. A (Def. National Association for Stock Car Auto Racing, Inc's Notice of Subpoena, p. 1).

NASCAR's subpoena sought document production regarding "[a]ny communication from or with anyone affiliated with plaintiffs' counsel in this action, including without limitation Sam Cherry, Esq." *Id.*, Ex. A (Def. National Association for Stock Car Auto Racing's Notice of Subpoena, Schedule A, p. 6).

On August 21, 2003, Plaintiffs filed this motion to quash NASCAR's subpoena.

## II. LEGAL STANDARDS

### A. WORK–PRODUCT DOCTRINE

#### 1. IN GENERAL

■ The federal work-product doctrine is codified in Federal Rule of Civil Procedure 26(b)(3), which states the following:

> Trial Preparation: Materials. Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

FED R. CIV. P. 26(b)(3). The work-product doctrine provides qualified protection of documents and tangible things prepared in anticipation of litigation, including "a lawyer's research, analysis of legal theories, mental impressions, notes, and memoranda of witnesses' statements." *Dunn v. State Farm Fire & Cas. Co.,* 927 F.2d 869, 875 (5th Cir.1991) (citing *Upjohn Co. v. United States,* 449 U.S. 383, 400, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981); *United States v. El Paso Co.,* 682 F.2d 530, 543 (5th Cir.1982)).

■ The party who asserts work-product protection must show that the materials at issue deserve work-product protection. *Hodges, Grant & Kaufmann v. United States,* 768 F.2d 719, 721 (5th Cir.1985). Four elements must be established. First, the materials must be documents or tangible things. *See* 8 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2024, at 336 (2d ed.1994). Second, the materials must be prepared in anticipation of litigation or for trial. In other words, the party had reason to anticipate litigation and "the primary motivating purpose behind the creation of the document was to aid in possible future litigation." *In re Kaiser Aluminum & Chem. Co.,* 214 F.3d 586, 593 (5th Cir.2000) (citations omitted). Third, the materials must be prepared by or for a party's representative. FED.R.CIV.P. 26(b)(3). Fourth, if the party seeks to show that material is opinion work-product, that party must show that the material contains the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party. *Id.; see In re Int'l Sys. & Controls Corp. Sec. Litig.,* 693 F.2d 1235, 1240 (5th Cir.1982).

■ If a party proves that materials merit work-product protection, the party seeking discovery must prove why those materials should still be produced. *Hodges, Grant & Kaufmann,* 768 F.2d at 721. The party seeking discovery must establish:

> 1) a "substantial need of the materials in the preparation of the party's case;"[1] and
>
> 2) an inability "without undue hardship to obtain the substantial equivalent of the material by other means."[2]

#### 2. WAIVER

■ Work-product protection is not automatically waived by disclosure to a third party. *Aiken v. Tex. Farm Bureau Mut. Ins. Co.,* 151 F.R.D. 621, 623 n. 2 (E.D.Tex. 1993) (citing *Shields v. Sturm, Ruger & Co.,* 864 F.2d 379, 382 (5th Cir.1989)). Disclosure of work-product waives work-product protection only if work-product is given to adversaries or treated in a manner that substantially increases the likelihood that an adversary will come into possession of the

---

**1.** *In re Int'l Sys. & Controls Corp. Sec. Litig.,* 693 F.2d at 1240 (quoting FED.R.CIV.P. 26(b)(3)).

**2.** *Id.* (quoting FED R.CIV P. 26(b)(3)).

material. *See High Tech Comms., Inc. v. Panasonic Co.,* Civ. A. No. 94–1477, 1995 WL 83614, at *8 (E.D.La. Feb.24, 1995) (citations omitted). The burden of proving waiver of work-product protection falls on the party asserting waiver. *Id.*

## B. THE COMMON INTEREST DOCTRINE

■■■■■ Despite its name, the common interest privilege is neither common nor a privilege. Instead, it is an extension of the attorney-client privilege and of the work-product doctrine. *See In re LTV Secs. Litig.,* 89 F.R.D. 595, 604 (N.D.Tex.1981) (noting that the common interest doctrine "extends the attorney-client privilege to communications made in the course of joint defense activities"); *see also Power Mosfet Techs. v. Siemens AG,* 206 F.R.D. 422, 424 (E.D.Tex. 2000) (stating that the common interest doctrine applies to the work-product doctrine). Generally, when an attorney divulges privileged information to a third party, attorney-client and work-product protection cease to exist. *See United States v. Pipkins,* 528 F.2d 559, 563 (5th Cir.1976). The common interest doctrine, however, "extends a recognized privilege, commonly the attorney-client or work product privileges, to cover those communications." *Siemens AG,* 206 F.R.D. at 424. Consequently, the common interest doctrine is "an exception to the general rule that the attorney-client privilege is waived upon disclosure of privileged information with a third party." *Katz v. AT & T Corp.,* 191 F.R.D. 433, 436 (E.D.Pa.2000) (citations omitted). This exception also applies to the work-product doctrine. *Siemens AG,* 206 F.R.D. at 424.

■■■ The common interest doctrine "is rooted in criminal proceedings against multiple defendants." *Id.* (citing *Chahoon v. Commonwealth,* 62 Va. 822, 21 Gratt. 822 (1871)). Often, multiple defendants were charged with the same criminal conduct or acts. *See id.* In those situations, the attorneys representing different defendants would formulate a common defense. *See id.* The defendants all had a common interest—avoiding conviction. These policy considerations led courts to recognize a joint defense doctrine. *See id.* This doctrine shields communications between and documents exchanged by criminal defense attorneys engaged in a joint defense effort. *See id.*

■■■ Because co-defendants or multiple defendants in civil cases have joint or similar objectives, courts gradually applied the joint defense doctrine to civil defendants. *See, e.g., In re LTV Secs. Litig.,* 89 F.R.D. at 604. Through these cases, the common interest doctrine emerged. *See Siemens AG,* 206 F.R.D. at 424. In civil litigation, the two types of communications protected by the common interest doctrine are:

(1) communications between co-defendants in actual litigation and their counsel; *see, e.g., Wilson P. Abraham Constr. Corp. v. Armco Steel Corp.,* 559 F.2d 250, 253 (5th Cir.1977); and

(2) communications between *potential* co-defendants and their counsel. *See Hodges, Grant & Kaufmann v. United States,* 768 F.2d 719, 721 (5th Cir.1985); *Aiken v. Tex. Farm Bureau Mut. Ins. Co.,* 151 F.R.D. 621, 624 (E.D.Tex.1993).

*In re Santa Fe Int'l Corp.,* 272 F.3d 705, 710 (5th Cir.2001).

■■■■ The common interest doctrine protects communications between two parties or attorneys that share a common legal interest. *See Hodges, Grant & Kaufmann,* 768 F.2d at 721; *Aiken,* 151 F.R.D. at 623. The common interest doctrine applies to cases involving co-defendants, an insurer and an insured, and a patentee and a licensee. *See In re LTV Secs. Litig.,* 89 F.R.D. at 604; *see also United States v. Mass. Inst. of Tech.,* 129 F.3d 681, 685 & n. 4 (1st Cir.1997) (collecting cases).

## III. ANALYSIS

## 1. PLAINTIFFS' WORK–PRODUCT CLAIM

■■■ Plaintiffs claim that the communications between Parker Poe and counsel for Plaintiffs are work-product and protected from discovery. Pls.' Mot. to Quash Subpoena for Parker, Poe, Adams & Bernstein, LLP to Produc. Docs. at 2. Specifically, Plaintiffs argue that three emails sent from counsel for Plaintiffs to counsel for Speedway "are the

opinion work product of Plaintiffs' counsel." Pls.' Reply to NASCAR's Opp'n to the Mot. to Quash at 1. Accordingly, Plaintiffs aver that NASCAR's subpoena should be quashed. *See* FED.R.CIV.P. 45(c)(3)(A)(iii) ("On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it ... requires disclosure of privileged or other protected matter and no exception or waiver applies....").

■ Plaintiffs have not stated any facts supporting their work-product claim. Nor have Plaintiffs shown how communications between counsel for Plaintiffs and counsel for Speedway contain "the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party." FED.R.CIV.P. 26(b)(3). Instead, Plaintiffs make blanket assertions of work-product protection.[3] These blanket assertions are insufficient. *See United States v. Davis,* 636 F.2d 1028, 1044 n. 20 (5th Cir. Unit A Feb.1981) (citations omitted). Plaintiffs focus their energies on arguing why the common interest doctrine protects these three emails. Pls.' Mot. to Quash Subpoena for Parker, Poe, Adams & Bernstein, LLP to Produc. Docs. at 1–4. Plaintiffs have not, however, proved an underlying privilege that would give rise to the common interest doctrine. *See Siemens AG,* 206 F.R.D. at 424. Accordingly, Plaintiffs' work-product claim fails.

## 2. THE APPLICABILITY OF THE COMMON INTEREST DOCTRINE TO SHAREHOLDER DERIVATIVE LAWSUITS

■ Plaintiffs argue that the common interest doctrine protects communications between counsel for Plaintiffs and counsel for Speedway and prevents waiver of work-product protection. Pls.' Mot. to Quash Subpoena for Parker, Poe, Adams & Bernstein, LLP to Produc. Docs. at 2. The court disagrees with Plaintiffs. Even assuming, *arguendo,* that Plaintiffs' communications with Speedway fall under the work-product definition, the common interest doctrine does not apply here.

■ Courts have shown significant restraint in expanding the boundaries of the common interest doctrine. *See In re Santa Fe Int'l,* 272 F.3d at 710. This restraint is sensible. The common interest doctrine excludes documents and communications from discovery Thus, it should be construed narrowly and applied cautiously. *See id.*

To date, this circuit has only applied the common interest doctrine in civil cases to "(1) communications between co-defendants in actual litigation and their counsel; ... and (2) communications between *potential* co-defendants and their counsel." *Id.* (citations omitted). This circuit has neither held nor concluded that shareholder derivative lawsuits "fall within its core." *Id.* Accordingly, the court is unwilling to extend the common interest doctrine to shareholder derivative lawsuits.

Plaintiffs' argument that the common interest doctrine applies to shareholder derivative lawsuits lacks merit. This argument is unsupported by this circuit's precedent. Moreover, the record in this case plainly shows that Ferko and Speedway do not share a common legal interest.[4] Because the common interest doctrine does not apply here, Plaintiffs have waived work-product protection by communicating with Speedway. *Cf. id.* at 713–15.

---

**3.** *See* Pls.' Mot. to Quash Subpoena for Parker, Poe, Adams & Bernstein, LLP to Produc. Docs. at 2 (stating only that "the communications, however, are work-product and protected from discovery" (footnote omitted)); Pls.' Reply to NASCAR's Opp'n to the Mot. to Quash at 1 ("[T]he emails are the opinion work product of plaintiffs' counsel.").

**4.** The court previously denied NASCAR's motion to realign Speedway as a plaintiff and dismiss Ferko. *Ferko v. NASCAR,* 216 F.R.D. 392, 394 (E.D.Tex.2003). The main reason for the court's denial of that motion was the existence of antagonism between Ferko and Speedway. *Id.* It is true that both Speedway and Ferko would bene-

fit if Ferko won this lawsuit. Speedway would recover damages; Ferko would recover attorney's fees. Speedway and Ferko, however, do not share a common legal interest. The interests of Ferko and Speedway have diverged from the moment Speedway refused Ferko's demand to sue NASCAR. *See id.* ("The 'antagonism' between Speedway and Ferko is inherent in the very *prosecution* of this action."). Speedway has effectively conceded as much. *See* Def. Speedway Motorsports, Inc.'s Sur–Reply in Opp'n to NASCAR's Mot. to Realign at 2 (Dkt.# 80) ("[Speedway] has not asserted Ferko's claims; therefore, it is antagonistic to Ferko and must remain a nominal defendant."); *id.* at 4 ("Accordingly, [Speedway] remains 'antagonistic' to

It is true that work-product protection is not automatically waived by disclosure to a third party who does not share a common legal interest. *Aiken v. Tex. Farm Bureau Mut. Ins. Co.*, 151 F.R.D. 621, 623 n. 2 (E.D.Tex.1993) (citing *Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989)). Here, however, Plaintiffs have disclosed information to and communicated with Speedway, a nominal adversary and a party with whom Plaintiffs lack a common legal interest. Moreover, the record in this case demonstrates that Plaintiffs and Speedway have been in active contact with each other. Under these circumstances, NASCAR has proved that waiver of work-product protection occurred.[5]

### IV. CONCLUSION

Plaintiffs only offer conclusory allegations that the communications at issue are protected by the work-product doctrine. This blanket claim of work-product protection does not constitute grounds for quashing NASCAR's subpoena under Federal Rule of Civil Procedure 45(c)(3)(A)(iii). Even assuming, *arguendo*, that these communications are work-product, the common interest doctrine does not apply to this shareholder derivative lawsuit. Consequently, Parker Poe, counsel for

Ferko's suit as that term has been defined in the case law, and realignment would be improper."). Ferko has made a similar concession. *See* Pl.'s Opp'n to Def. NASCAR's Opposed Mot. to Realign Def. Speedway Motorsports, Inc. as a Pl. and to Dismiss Pl. Francis Ferko at 6 (Dkt.# 69) ("Accordingly, [Speedway] should not be realigned as a plaintiff, due to its reluctance to invest sufficient resources in the litigation and its close business relationship with NASCAR.").

**5.** Plaintiffs cite *In re Sealed Case*, 29 F.3d 715 (D.C.Cir.1994), *United States v. McPartlin*, 595 F.2d 1321 (7th Cir.1979), and *United States ex. rel Purcell v. MWI Corp.*, 209 F.R.D. 21 (D.D.C. 2002), to buttress their argument that Speedway and Plaintiffs have a common legal interest despite the presence of antagonism. Pls.' Mot. to Quash Subpoena for Parker, Poe, Adams & Bernstein, LLP to Produc. Docs. at 2. *McPartlin* involved a criminal prosecution; *MWI Corp.* involved a *qui tam* action in which the government intervened; *In re Sealed Case* involved a grand jury investigation. *See In re Sealed Case*, 29 F.3d at 716–17; *McPartlin*, 595 F.2d at 1327–32; *MWI Corp.*, 209 F.R.D. at 22–24. These three cases represent situations where the common

Speedway, waived work-product protection through communicating with counsel for Plaintiffs. Because waiver of work-product protection occurred, NASCAR's subpoena is proper. *See* FED.R.CIV.P. 45(c)(3)(A)(iii). Plaintiffs' motion to quash the subpoena issued for Parker Poe is DENIED.

It is so ORDERED.

interest doctrine applies because both parties plainly have a common legal interest. Consequently, these three cases are distinguishable.

Citing *Ward v. Succession of Freeman*, 854 F.2d 780 (5th Cir.1988), *Eisenberg v. Gagnon*, 766 F.2d 770 (3d Cir.1985), and *In re International Systems and Controls Corporation Securities Litigation*, 693 F.2d 1235 (5th Cir.1982), Plaintiffs claim that a shareholder derivative plaintiff and a corporation can have a mutuality of interests. Pls.' Mot. to Quash Subpoena for Parker, Poe, Adams & Bernstein, LLP to Produc. Docs. at 2; Pls.' Reply to NASCAR's Opp'n to the Mot. to Quash at 3–4. *Eisenberg*, however, involved "a common defense strategy between a defendant and an attorney who was responsible for coordinating a common defense position." 766 F.2d at 787. Because Plaintiffs and Speedway have not coordinated and indeed cannot coordinate a common defense position, *Eisenberg* does not apply. *In re International Systems and Controls Corporation Securities Litigation* and *Ward* are equally inapposite. Both cases involved a shareholder derivative lawsuit filed *against* the corporation. 854 F.2d at 782–84; 693 F.2d at 1237–38. Thus, these three cases do not support Plaintiffs' arguments.