**UNITED STATES of America,
Plaintiff,**

v.

**Angela JOHNSON, Defendant.**

**No. CR 01–3046–MWB.**

United States District Court,
N.D. Iowa,
Central Division.

March 2, 2005.

Charles J. Williams, U.S. Attorney's Office, Cedar Rapids, IA, Thomas Henry Miller, Des Moines, IA, for plaintiff.

Alfred E Willett, Terpstra, Epping & Willett, Cedar Rapids, IA, Dean A Stowers, Rosenberg, Stowers & Morse, Des Moines, IA, Patrick J Berrigan, Watson & Dameron, LLP, Kansas City, MO, Robert R Rigg, Drake University Legal Clinic, Des Moines, IA, for defendant.

## MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTION FOR RETURN OF PRIVILEGED MATERIALS

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I. *INTRODUCTION* ...................................................1043
 A. *Procedural Background* .............................................1043
 B. *Factual Background* .............................................1043

II. *LEGAL ANALYSIS* ...............................................1044
 A. *Arguments Of The Parties* ........................................1044
 B. *The Work–Product Privilege* .......................................1045
 C. *Waiver Of The Privilege* ..........................................1046

III. *CONCLUSION* ..................................................1049

### I. INTRODUCTION

#### A. Procedural Background

This matter comes before the court pursuant to defendant Angela Johnson's January 31, 2005, Motion For Return Of Privileged Materials (docket no. 310). The government resisted the motion on February 8, 2005 (docket no. 316), and the defendant filed a reply in further support of her motion on February 10, 2005 (docket no. 318). On February 24, 2005, the parties filed a stipulation regarding the factual background to this motion (docket no. 337). The court held a hearing on the motion on February 25, 2005. At the hearing, the United States was represented by Assistant United States Attorney C.J. Williams and defendant Johnson was represented by attorney Dean Stowers. This motion is now ripe for disposition.

#### B. Factual Background

The following facts are drawn from the parties' stipulation, although the recitation of facts here is considerably abbreviated. According to the stipulation of the parties, at some point in fulfilling her duties, Mary Goody, the defendant's mitigation specialist, prepared a chronology of Johnson's

life. The chronology, a copy of which has now been provided to the court, indicates that it was prepared by "Mary Goody, Mitigation Specialist," and that it is an "Angela Johnson Chronology 4/22/02." Ms. Goody eventually provided a copy of that chronology to Johnson. A superficial review of the copy provided to the court indicates that Johnson then made various hand-written annotations on the chronology. This chronology, as annotated by Johnson, is the "privileged material" at issue in Johnson's present motion.

The present dispute arose because, in October of 2004, Johnson sent an annotated copy of the chronology to a third party, improperly marking the letter containing the chronology as attorney-client privileged mail. The recipient, Valli Williams, was a disbarred attorney whom Johnson had befriended while both were incarcerated in the Linn County Jail, where Ms. Johnson was awaiting trial on capital charges and Ms. Williams was awaiting trial on fraud charges. Ms. Williams has since served her sentence on the fraud charges, has been released from custody, and is living in Illinois, where she works as the manager for a dental care office.

Johnson's purpose in sending the chronology to Ms. Williams was to assist Ms. Williams in writing a book about Johnson's life.

Johnson was aware that non-privileged mail would be opened and copied by jail personnel. Therefore, she came up with a scheme to prevent jail personnel from opening and copying her mail to Ms. Williams by marking it attorney-client privileged, even though Ms. Williams has confirmed to investigators that she is not now a practicing attorney, she does not represent Johnson, nor has she otherwise contributed to Johnson's defense. Unfortunately for Johnson, jail personnel saw through the fraudulent use of attorney-client privileged mailings and intercepted and copied Johnson's mailings to Ms. Williams. Law enforcement officers verified that Ms. Williams was not a practicing attorney and was not representing Johnson before jail personnel provided copies of the intercepted mail to Special Agent Bill Basler, a law enforcement officer involved in the investigation of the present charges against Johnson.

Agent Basler received a copy of the chronology in November of 2004. Agent Basler passed on a copy of the chronology to the lead prosecutor in this case, the prosecutor had the copy scanned and bates stamped, and the chronology then made its way into the government's discovery file, open to defense counsel, on January 5, 2005. The rest of the correspondence between Johnson and Ms. Williams was produced to defense counsel about a week later with a cover letter explaining how the materials had come into the government's hands.

When Johnson filed her motion for return of privileged materials, the court directed the government to seal or destroy all copies of the chronology in its possession. The government represents, and Johnson does not dispute, that the copies in Agent Basler's and the prosecutor's possession were sealed, and at the hearing on February 25, 2005, the government represented that a third copy of the chronology, which had been sent to a government consultant, had been shredded at the prosecutor's direction.

## II. LEGAL ANALYSIS

### A. Arguments Of The Parties

Johnson contends that the chronology is subject to the work-product privilege and that she did not waive that privilege by disclosing it to Ms. Williams or by improperly marking it as legal mail. She contends that the Eighth Circuit Court of Appeals requires "an actual intention" that work product would be seen by the opposing party in order for the protection of the privilege to be lost. She asserts, however, that she had no such intention that the United States would see the chronology at issue here. Rather, she asserts that she was trying to avoid the chronology falling into the hands of the government by enclosing it in mail marked attorney-client privileged. Consequently, she requests that the court direct the government to return any and all copies of the chronology to defense counsel, together with any notes or other items prepared from it, and that the court direct the government to disclose to the defense anyone else who has seen the document and what they have done in response to seeing it, so that she can seek any necessary further relief.

The government responds that, assuming that the chronology *and* Johnson's annotations to it are both subject to the work-product privilege, Johnson has waived the privilege. Contrary to Johnson's position, the government contends that disclosure of attorney work product to a third party or an opposing party generally constitutes waiver of the privilege as to the item in question. Even inadvertent

disclosure to the opposing party may waive the work-product privilege, the government contends, as may intentional production of the privileged item to a third party not involved in the litigation, because such disclosures diminish the expectation of privacy. Here, the government asserts that Johnson waived the privilege with respect to the chronology when she voluntarily and intentionally produced it to a third party, Ms. Williams. The government contends that Johnson's actions eliminated any reasonable expectation of privacy in the chronology, because Johnson knew that her mail could be read by jail personnel and engaged in fraudulent efforts to evade such review. The government contends that this is not a case of inadvertent disclosure, but one of intentional disclosure, because Johnson could not reasonably have expected that falsely marked attorney-client mail would not be subject to search. To hold otherwise, the government contends, is to reward Johnson for her attempted fraud. The government also asserts that the Eighth Circuit Court of Appeals has held that a *court* has no further duty to protect work product once the item in question has already reached an adversary, and the court may, instead, leave the parties where it finds them. The government argues that common sense dictates that Johnson waived the privilege in this case.

In her reply, Johnson contends that no problem would have arisen if jail personnel has simply followed the letter of the jail policy, either by not tampering with mail marked attorney-client privileged or by opening Johnson's outgoing mail in her presence so that she could retrieve any privileged material before it was intercepted. She contends that the government's willingness to intercept her mail marked attorney-client privileged is consistent with the government's limited attention to her rights. She contends, further, that the government's cases finding inadvertent

waiver of the privilege are inconsistent with the law of this circuit and are otherwise distinguishable. In essence, Johnson contends that she did not, and did not intend to, disclose the chronology to her adversary, and that she cannot be deemed to have waived the privilege without an actual intention that the material would be seen by her adversary. Johnson also contends that she did not engage in any fraudulent scheme, but instead attempted to take advantage of the jail policy, as written. In any event, she contends that the record shows that she was endeavoring to keep the document in question *secret* from the government.

### B. The Work–Product Privilege

■■■ The Supreme Court has recognized the work-product doctrine as "a qualified privilege for certain materials prepared by an attorney 'acting for his client in anticipation of litigation.'" *United States v. Nobles*, 422 U.S. 225, 237–38, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975) (quoting *Hickman v. Taylor*, 329 U.S. 495, 508, 67 S.Ct. 385, 91 L.Ed. 451 (1947)). The Court has recognized, further, that the reality of litigation is that the work-product privilege must extend to "material prepared by agents for the attorney as well as those prepared by the attorney himself." *Id.* at 238–39, 95 S.Ct. 2160. As the Supreme Court has explained,

Although the work-product doctrine most frequently is asserted as a bar to discovery in civil litigation, its role in assuring the proper functioning of the criminal justice system is even more vital. The interests of society and the accused in obtaining a fair and accurate resolution of the question of guilt or innocence demand that adequate safeguards assure the thorough preparation and presentation of each side of the case.

*Nobles,* 422 U.S. at 238, 95 S.Ct. 2160; *see also* FED. R. CRIM. P. 16(b)(2) (providing that, "[e]xcept for scientific or medical reports, Rule 16(b)(1) does not authorize discovery or inspection of ... reports, memoranda, or other documents made by the defendant, or the defendant's attorney or agent, during the case's investigation or defense"). There is no dispute in this case that Ms. Goody's chronology is subject to work-product protection, unless that protection has been waived. *See Nobles,* 422 U.S. at 237–38, 95 S.Ct. 2160 (defining work product as materials prepared by the defendant's attorney or the attorney's agent in anticipation of litigation). Although the government suggests that Johnson's annotations to the chronology may not be subject to work-product protection, the court does not agree: Absent proof that the annotations were made for Ms. Williams's benefit only, such annotations appear to be "made by the defendant ... during the case's investigation or defense" to assist in the preparation of Johnson's "mitigation" case. *See* FED. R. CRIM. P. 16(b)(2) (so defining work product); *see also Nobles,* 422 U.S. at 237–38, 95 S.Ct. 2160 (work product includes materials prepared by the defendant's attorney or the attorney's agent in anticipation of litigation). Therefore, the court concludes that the chronology and annotations thereon are subject to the work-product privilege, unless that privilege has been waived by Johnson's disclosure of the chronology to Ms. Williams.

### C. Waiver Of The Privilege

 "The privilege derived from the work-product doctrine is not absolute. Like other qualified privileges, it may be waived." *Nobles* 422 U.S. at 239, 95 S.Ct. 2160. Johnson contends that only intentional disclosure to her adversary will waive the privilege, while the government contends that inadvertent disclosure to the government or intentional disclosure *to a* third party, such as Ms. Williams, will waive the privilege. Thus, the parties not only dispute whether any waiver has occurred, but the applicable standard for determining whether a waiver has occurred.

Johnson relies on a bald statement in *Gundacker v. Unisys Corp.,* 151 F.3d 842 (8th Cir.1998), that "[a]lthough disclosure to an adversary ordinarily waives work-product protection, there must be an intention that the opposing party see the work product." *Gundacker,* 151 F.3d at 848. However, the authority on which *Gundacker* relies for this bald statement, *Pittman v. Frazer,* 129 F.3d 983 (8th Cir. 1997), cannot reasonably support the proposition for which *Gundacker* cites it. Rather, in *Pittman,* the Eighth Circuit Court of Appeals explained that "disclosure to an adversary waives work product protection as to items actually disclosed," noting that " '[i]f documents otherwise protected by the work-product rule have been disclosed to others with an actual intention that an opposing party may see the documents, the party who made the disclosure should not subsequently be able to claim protection for the documents as work product.' " *Pittman,* 129 F.3d at 988 (quoting 8 C. WRIGHT, A. MILLER & R. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2024 at 209 (1994)). Although this language shows that "an actual intention that an opposing party may see the documents" is *sufficient* to waive the work-product privilege, it does not state that such an "actual intention" is *required* nor does it reasonably suggest such a requirement. Moreover, the Eighth Circuit Court of Appeals has also recognized that, when documents are voluntarily released *to third parties,* a party's assertion that the documents are confidential is rendered substantially less credible. *United States v. Metropolitan St. Louis Sewer Dist.,* 952 F.2d 1040, 1045 (8th Cir.1992). Thus, the

court rejects Johnson's contention that she must have had an "actual intention" that the government see the chronology before the court can find that she waived the work-product privilege as to the chronology.

The real question is whether Johnson's disclosure of the chronology to a third party, Ms. Williams, waived her work-product protection for the chronology. Courts generally agree that, "because the work product privilege looks to the vitality of the adversary system rather than simply seeking to preserve confidentiality, it is not automatically waived by the disclosure to a third party." *In re Grand Jury Subpoena,* 220 F.3d 406, 409 (5th Cir.2000) (citing *United States v. AT&T Co.,* 642 F.2d 1285, 1299 (D.C.Cir.1980)); *In re Grand Jury Proceedings,* 43 F.3d 966, 970 (5th Cir.1994) ("[W]e find it necessary to reiterate that 'the mere voluntary disclosure to a third person is insufficient in itself to waive the work product privilege.'") (quoting *Shields v. Sturm, Ruger & Co.,* 864 F.2d 379, 382 (5th Cir.1989)); *but see In re Lindsey,* 158 F.3d 1263, (D.C.Cir.1998) ("As a usual rule, disclosure of attorney-client or work product confidences to third parties waives the protection of the relevant privileges."); *Genentech, Inc. v. United States Int'l Trade Comm'n,* 122 F.3d 1409, 1415 (Fed.Cir. 1997) ("Generally disclosure of confidential communications or attorney work product to a third party, such as an adversary in litigation, constitutes a waiver of privilege as to those items."). The question, of course, is when *does* disclosure to a third party waive the work-product privilege? The lower courts have concluded that a waiver occurs when the disclosure to a third party *substantially increases the likelihood that an adversary will come into possession of the material. See, e.g., Ferko v. National Ass'n for Stock Car Auto Racing, Inc.,* 219 F.R.D. 396, 400–01 (E.D.Tex.2003); *High Tech Communica-*

*tions, Inc. v. Panasonic Co.,* 1995 WL 83614, *5 (E.D.La. Feb.24, 1995); *Aiken v. Texas Farm Bureau Mutual Ins. Co.,* 151 F.R.D. 621, 623 n. 2 (E.D.Tex.1993); *In re Convergent Technologies,* 122 F.R.D. 555, 564 (N.D.Cal.1988); *Anderson v. Torrington Co.,* 120 F.R.D. 82, 86–87 (N.D.Ind. 1987); *see also Shields v. Sturm, Ruger & Co.,* 864 F.2d 379, 382 (5th Cir.1989); *United States v. AT&T,* 642 F.2d 1285, 1299 (D.C.Cir.1980). This court finds that such a formulation of the circumstances under which a waiver of the work-product privilege occurs is consonant with the observation of the Eighth Circuit Court of Appeals that, when documents are voluntarily released *to third parties,* a party's assertion that the documents are confidential is rendered substantially less credible. *Metropolitan St. Louis Sewer Dist.,* 952 F.2d at 1045. Therefore, this court will also apply this standard to determine whether a disclosure to a third party has waived the work-product privilege.

The government makes an appealing argument that, by knowingly mismarking her mailings to Ms. Williams as attorney-client privileged mail, Johnson substantially increased the likelihood that the fraud would be recognized, and that, as a consequence, jail personnel or law enforcement officers would eventually obtain the work product at issue here. Johnson contends that she just as plainly was taking measures under the jail policy, as written, to protect the secrecy of the materials she mailed to Ms. Williams, and had jail personnel followed the literal terms of the policy, the chronology would either never have been opened, or would have been opened in her presence, so that she could retrieve items improperly sent as privileged mail.

The court finds that a very close question is presented as to whether or not Johnson substantially increased the likeli-

hood that the government would come into possession of the chronology when she mailed the chronology to Ms. Williams knowing that it was improperly marked as attorney-client privileged mail. *See, e.g., Ferko*, 219 F.R.D. at 400–01 (applying this test to determine whether disclosure to a third party waives the work-product privilege). The court does not condone, and has no desire to reward, such fraudulent use of attorney-client mail by inmates. Moreover, jail personnel and law enforcement officers did not act improperly, as Johnson seems to suggest, by seeing through the fraud and thereby obtaining the materials at issue in this case.[1] Agent Basler is also to be praised for his careful steps to verify whether or not the mailings could legitimately be considered attorney-client mail, by checking Ms. Williams's status as an attorney and her relationship with Johnson, before receiving copies of the correspondence in question. Furthermore, Johnson's voluntary release of the chronology to a third party, Ms. Williams, apparently for the purpose of future publication in one form or another, renders Johnson's assertion that the chronology is confidential substantially less credible. *Metropolitan St. Louis Sewer Dist.*, 952 F.2d at 1045. On the other hand, a fair reading of the jail policy regarding privileged mail is that *incoming or outgoing* mail identified as privileged should have been "taken to the inmate and opened" in her presence, Exhibit A, § S, subpara. "Privileged Mail"; *see also id.*, subpara. "Regular Mail Service" ("Federal detainees will have their mail opened in their presence, scanned, and contraband removed at that time."), which would have allowed Johnson to retrieve items that had been improperly designated as attorney-client privileged. Thus, while the court finds that it was substantially likely that jail personnel would intercept Johnson's mailings improperly marked as privileged, it does not follow that it was substantially likely that the contents of such mailings would come into the hands of the prosecutors. Finally, to the extent that Johnson's intent is relevant to the question, *see Gun-*

1. There are, however, significant ambiguities in the pertinent provision of the jail mail policy. That provision states, in part, "Any correspondence, incoming or outgoing, *identified* as privileged will not be opened or read. It will be taken to the inmate and opened in the presence of the addressee." Exhibit A, § S, subpara. "Privileged Mail" (emphasis added). The first problem with this provision is that the first quoted sentence begs the question, "identified as privileged" *by whom?* The inmate, an outside sender, jail personnel? "Marked as privileged" would be less ambiguous, because it would indicate action by either the sender or recipient, but not jail personnel, if that is what is intended. The sentence of the provision providing that "mail identified as privileged" will not be opened or read, but will instead "be taken to the inmate and opened *in the presence of the addressee*," *see id.*, also makes little sense, because *outgoing* privileged mail cannot be "opened in the presence of the addressee," who is some party *outside of the jail*. Although the definition of "privileged correspondence" as "that to or from 1) An Attorney 2) A Judge 3) The Governor of Iowa 4) The Citizen's Aid Office 5) A Member of the State or Federal Legislature 6) Embassies 7) Consulates 8) The Department of Homeland Security 9) U.S. Public Health Service 10) Representatives of the news media," *see id.*, may suggest that jail personnel are entitled to determine whether or not mail is to or from such an individual or entity to determine whether or not it is privileged, the policy does not expressly state that jail personnel will make any attempt to verify whether or not mail marked as privileged is, in fact, privileged, by opening it or otherwise. Similarly, the policy does state that "Federal detainees will have their mail opened in their presence, scanned, and contraband removed at that time," but does not make clear whether this provision applies to incoming mail, outgoing mail, or both *See id.*, subpara. "Regular Mail Service." The significance of these ambiguities is that it is difficult for inmates and jail personnel alike to determine what is or is not permissible in the handling of privileged mail.

*dacker*, 151 F.3d at 848, it is clear that she did *not* intend to disclose the chronology to the prosecutors in this case prior to her trial.

The court finds that, in this death-penalty case, in light of the closeness of the question, it is better to err on the side of upholding the work-product privilege and to decline to find a waiver. The court finds that doing so is more likely to assure the proper functioning of the criminal justice system and more likely to benefit the interests of society and the accused in obtaining a fair and accurate resolution of the question of guilt or innocence, which are the goals of the work-product doctrine in the context of criminal cases. *Nobles,* 422 U.S. at 238, 95 S.Ct. 2160.

### III. CONCLUSION

Upon the foregoing, Johnson's January 31, 2005, Motion For Return Of Privileged Materials (docket no. 310) is **granted**. The government is directed to return any and all copies of the chronology to defense counsel, together with any notes or other items prepared from it, and to disclose to the defense anyone else who has seen the document and what they have done in response to seeing it, if anything. The government will be precluded from using against Johnson evidence, if any, obtained directly or indirectly through exploitation of its possession of the annotated chronology.

**IT IS SO ORDERED.**